ATLANTA SHIPPING CORP., Plaintiff,

v.

INTERNATIONAL MODULAR
HOUSING, INC., Defendant.

ATLANTA SHIPPING CORP., Petitioner,

v.

INTERNATIONAL MODULAR
HOUSING, INC., Respondent.

INTERNATIONAL MODULAR
HOUSING, INC., Petitioner,

v.

ATLANTA SHIPPING CORP.,
Respondent.

INTERNATIONAL MODULAR
HOUSING, INC., Plaintiff,

v.

ATLANTA SHIPPING CORPORATION,
Maritime Transport Overseas,
Inc., Defendants.

Nos. 77 Civ. 1471 (GLG), 82 Civ. 2777
(GLG), 82 Civ. 2800 (GLG) and 82
Civ. 3081 (GLG).

United States District Court,
S. D. New York.

Sept. 30, 1982.

Zock, Petrie, Reid & Curtin, New York City, for Atlanta Shipping Corp. and Maritime Transport Overseas, Inc.; Donald Burke, Nicholas P. Giuliano, New York City, of counsel.

Golenbock & Barell, New York City, for Intern. Modular Housing, Inc.; Michael C. Silberberg, Michael M. Meadvin, New York City, of counsel.

## OPINION

GOETTEL, District Judge.

This litigation, which has become a legal donnybrook of regrettable proportions, arises from the shipment of mobile homes to Saudi Arabia. Before this Court are numerous motions and cross motions by each of the parties.

Atlanta Shipping Corp. (Atlanta) is a Liberian corporation with its principal place of business in Zurich, Switzerland. Maritime Transport Overseas, Inc. (MTO) serves as Atlanta's general agent in the United States, booking cargoes for carriage from the United States to foreign ports aboard Atlanta's ships.[1] International Modular Housing, Inc. (IMH) sells modular structures such as mobile homes and mobile structures. It is an American company. Its place of incorporation and principal

---

1. MTO changed its name in 1981 to Atlantic Maritime Corporation. It is a Texas corporation with its principal place of business in Houston, Texas.

place of business are in dispute, but the dispute is not material.[2]

In 1976, IMH contracted with a company called National Homes Corp. to purchase 560 mobile homes. IMH then entered into a shipping contract with Atlanta, referred to in the trade as a Liner Booking Note, whereby Atlanta would carry the mobile homes from the United States to Saudi Arabia in four voyages. The Liner Booking Note provided for freight charges of $1.54 million per voyage and a payment schedule of 25% of the total freight charges for each voyage to be prepaid when the bills of lading were signed and 25% each thirty days thereafter until the balance was paid off. The total contract price was $6.16 million.

The first of the four contracted voyages was completed and paid for as provided for in the Liner Booking Note. Problems began with the second voyage. IMH paid the first three installments for this voyage, but did not pay the fourth. At about the same time that IMH missed this installment, it also failed to pay the first installment of the third voyage. (One installment was due on January 25, 1977; the other was due on February 9, 1977. The total arrearage came to $770,000.)

On February 22, 1977, after a long series of negotiations during which Atlanta allegedly threatened to sell the cargo, IMH and Atlanta entered into a "Credit Agreement," which restructured IMH's indebtedness to Atlanta and gave Atlanta title, possession, and a security interest in the cargo then aboard Atlanta's ship. The Credit Agreement also required IMH to deliver a bill of sale for the cargo to Atlanta's attorneys, Zock, Petrie, Reid & Curtin (Zock Petrie), who would hold it in escrow. IMH delivered this bill of sale and, in addition, executed a promissory note reflecting its obligations to Atlanta.

*The State Court Litigation*

On March 23, 1977, the date that the first installment was due under the Credit Agreement, IMH filed an action in New York State Supreme Court to void the Credit Agreement on the ground that it was obtained by economic duress. Named as defendants were Atlanta, MTO, and Zock Petrie, the escrow agents.[3] A month after the action was filed, the state court preliminarily enjoined the defendants from enforcing the Credit Agreement and directed the parties to proceed to trial quickly.[4] That direction notwithstanding, there has yet to be a trial of this action. Instead, the parties entangled themselves and the state court in literally years of litigation over various discovery disputes.

In April of this year, IMH stipulated to a voluntary dismissal of the action against Zock Petrie. When the state court entered a consent order based on this stipulation, Atlanta immediately filed a petition removing the state court action to this Court pursuant to 28 U.S.C. §§ 1441(b), 1446(b) (1976). (It bears civil index number 82 Civ. 3081.) The day before the case was removed, a State Supreme Court judge entered an order, on IMH's motion to strike Atlanta's pleading, directing Atlanta's principals to appear for deposition. As it ap-

---

2. The pleadings list New York as the place of incorporation and Hicksville, New York as the principal place of business. Atlanta claims that IMH is, in fact, a Delaware corporation with its principal place of business in New York City. (To support this claim, Atlanta has submitted a photocopy of IMH's certificate of incorporation in Delaware as well as a portion of the 1981 1982 edition of the Manhattan telephone directory.) Although the citizenship of IMH does not appear to be material to the issues presently before the Court, the record should be accurate. Accordingly, the Court directs IMH to establish its place of incorporation and its principal place of business.

3. The Complaint contains seven counts. Counts One and Two seek a declaration that the Credit Agreement and security interest are void. Count Three seeks to enjoin the defendants from enforcing the security interest. Counts Four through Six seek money damages from Atlanta and MTO for an eight-day delay in discharging the cargo from the third voyage. Count Seven seeks punitive damages from Atlanta and MTO.

4. A temporary restraining order granting similar relief had already been granted on the day that the action was commenced.

pears they will not appear, this order might have had a dispositive effect in the state court case. The order was not filed, however, until the day after the case was removed to federal court.

### The First Federal Court Litigation

On March 24, 1977, the day after IMH commenced the state court action to void the Credit Agreement, Atlanta commenced an action in this Court seeking to enforce the promissory note that IMH had delivered to Atlanta in connection with the Credit Agreement. (That case bears civil index number 77 Civ. 1471.) IMH moved to stay the federal court action pending the outcome of the state court litigation. This Court granted that motion by an order dated June 15, 1977, noting that the commencement of the action violated at least the spirit of the state court injunction. (Ironically, this Court also noted that there was no reason to believe that there would be a delay in a disposition of the state court action because it had been placed at the head of the waiting trial list.) The Court then placed the federal case on the suspense calendar of this Court, where it has since remained.[5]

### The New Federal Court Litigation

The remaining two cases pertain to arbitration proceedings that grew out of the state court litigation. A month after the state court action was commenced, Atlanta moved in state court for an order staying the action pending arbitration. (The Liner Booking Note contained a clause requiring arbitration of any dispute arising out of the agreement.) The state court granted this motion with respect to IMH's claim for damages arising out of an eight-day delay in the unloading of the cargo from the third voyage. *See supra* note 3. (The details regarding these arbitration proceedings will be discussed below.) For the purposes of general background, it is sufficient to note that on April 22, 1982, the arbitration panel issued a "Partial Final Award" for $2,012,-500 in Atlanta's favor. The case bearing index number 82 Civ. 2777, is a petition brought by Atlanta to confirm the arbitration award. The other case, 82 Civ. 2800, filed by IMH six hours after Atlanta filed its petition, is an action to vacate the arbitration award on the grounds that the arbitration proceedings violated IMH's constitutional rights and that Atlanta had waived its right to arbitration.

### The Motions

Having managed to initiate four federal actions involving the same dispute, the parties then fired off a barrage of motions. The first motion was Atlanta's motion to confirm the arbitration award. This was met by a cross-motion by IMH to vacate the arbitration award. Then IMH, not surprisingly, moved to remand the state action to the state court where it appeared to be on the threshold of victory.

While the foregoing motions were *sub judice,* IMH moved, in the removed action, for an order striking Atlanta's answer and granting judgment by default because of Atlanta's failure to obey the state court discovery orders. Atlanta then cross-moved, under the doctrine of judicial estoppel, to dismiss the complaint in the same action, claiming that IMH had acted inconsistently in the arbitration and the pending litigation. Atlanta also moved for an order staying the litigation pending the conclusion of the related arbitration proceedings. All of these motions are before the Court for resolution.[6]

### Motion to Remand

Although not the first filed, it seems logical to consider the remand motion first. As

---

**5.** The Court communicated with the parties on numerous occasions during this time period. The parties continually requested that the action be maintained on the suspense calendar pending the outcome of the state court litigation. When the additional cases were filed or removed to federal court, they were assigned to me as related cases pursuant to Rule 15 of the Rules for the Division of Business Among District Judges of the Southern District of New York.

**6.** In addition, several other motions were filed involving various procedural matters necessary to the foregoing. These either have been already decided or are mooted by the decision herein.

noted above, Atlanta and MTO removed this action after IMH stipulated to the dismissal of the claims against Zock Petrie. IMH contends that Zock Petrie acted improperly in obtaining this stipulation and that this Court should therefore remand the case to the state court. Before considering this argument, it is necessary to review the law pertaining to the removal of cases in which complete diversity is not obtained until after the action has been filed.

The general rule is that diversity must exist both at the time of filing in state court and at the time of removal. *See, e.g., Kinney v. Columbia Savings & Loan Ass'n,* 191 U.S. 78, 81, 24 S.Ct. 30, 31–32, 48 L.Ed. 103 (1903); *Stevens v. Nichols,* 130 U.S. 230, 231, 9 S.Ct. 518, 519, 32 L.Ed. 914 (1889). *See generally* 14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3723, at 592–93 (1976 & Supp. 1982). Under a judicially created exception, however, removal is permitted, even though diversity did not exist at the time the original action was commenced, when diversity is created by the plaintiff's *voluntary* termination of the action against the nondiverse party.[7] Thus, in this case, removal was possible because IMH stipulated to the dismissal of Zock Petrie. Had IMH objected to the state court's dismissal, removal probably would not have been allowed. *See, e.g., Quinn v. Aetna Life & Casualty Co.,* 616 F.2d 38, 40 n.2 (2d Cir. 1980).[8]

We now turn to the circumstances behind the stipulation to the dismissal of Zock Petrie. Counsel to Atlanta telephoned IMH's attorneys to request an adjournment of an IMH motion to impose discovery sanctions against Atlanta. During the course of this conversation, Donald Burke, a member of Zock Petrie, asked that the action be discontinued against Zock Petrie. When asked why, after five years of litigation, Zock Petrie was making such a request, Burke explained that the firm's presence in the lawsuit had cost it thousands of dollars in legal fees and that Zock Petrie would rather deposit the bill of sale into court than incur more fees. Counsel to IMH said that he would consider the request. Further discussions ensued over the next few days. In the meantime, Zock Petrie moved to dismiss the action against it on the condition that it deposit the bill of sale into court. More discussions followed. IMH ultimately agreed to stipulate to the dismissal of Zock Petrie, and the motion to dismiss was withdrawn.

IMH claims that the only reason it agreed to stipulate to the dismissal was that Zock Petrie requested IMH to do so as a "matter of professional courtesy." (Although Zock Petrie denies requesting the dismissal on that basis, whether the phrase "matter of professional courtesy" was actually used is not crucial to the resolution of this motion.) According to IMH, had it known that the real motive for the request was to remove the case to federal court, IMH would have forced Atlanta to litigate the motion. *See supra* note 8 and accompanying text.

Zock Petrie admits that removal, not the cost of litigation, was the firm's primary objective in making its request. Zock Petrie also admits that, once removal became the goal, the firm never disclosed its plan to IMH. It maintains that this was its "legal strategy" and that its conduct was not improper.

The Court is troubled by the ethics (or lack thereof) of Zock Petrie's "legal strategy." If IMH had not asked for an explanation of Zock Petrie's dismissal request, Zock

---

**7.** For an explanation of the history and reasons for this exception, see 14 C. Wright, A. Miller, & E. Cooper, *supra,* § 3723, at 593–96.

**8.** In *Quinn,* the Second Circuit first noted the justification for the different treatments of involuntary and voluntary dismissals of non-diverse parties and then explained why that justification had no application in *Quinn.* 616 F.2d at 40 n.2. An involuntary dismissal of the non-diverse party in a state court action should not lead to removal of the action to federal court if the complete diversity just created by the dismissal might be destroyed by an appeal and reversal of the state court's decision. Where, however, the possibility of such appeal no longer exists, as, for example, in *Quinn,* where timely appeal was barred by the statute of limitations, removal can be allowed.

Petrie clearly would have had no obligation to disclose its motives. Furthermore, Zock Petrie could have properly refused to give any explanation at all. By offering an incomplete and misleading explanation, however, Zock Petrie deceived its adversary.

Although such a deception constituted unbecoming conduct by a professional, it was not so egregious as to warrant either the sanctions sought by IMH or a remand.[9] IMH has itself to blame because its ignorance of the law caused it to take the steps that made removal possible. *Cf. Gravitt v. Southwestern Bell Telephone Co.*, 396 F.Supp. 948, 950 (W.D.Tex.1975) (plaintiffs who filed an amended complaint had no one but themselves to blame for making removal possible), *plaintiff's renewed motion to remand granted on other grounds*, 416 F.Supp. 830, *vacated by mandamus*, 535 F.2d 859 (5th Cir.), *aff'd as modified en banc*, 542 F.2d 297 (5th Cir. 1976), *rev'd and remanded*, 430 U.S. 723, 97 S.Ct. 1439, 52 L.Ed.2d 1 (1977). Had IMH simply demanded that the stipulation of dismissal contain a clause preventing removal, this action would still be before the state court. Moreover, IMH has not shown how it will be prejudiced by removal. IMH's only stated concern is that removal will permit Atlanta to escape the discovery sanctions of the state court; yet, as this Court has already advised the parties, it will adopt the rulings of the state court.

■■ IMH also argues that the defendants waived their right to removal because Zock Petrie actively litigated the case in state court. The short answer to this is that one cannot waive a right to remove until that right exists. *See Gravitt, supra*, 396 F.Supp. at 950; *Caldwell v. Montgomery Ward & Co.*, 207 F.Supp. 161, 162 (S.D.

Tex.1962). The defendants in this case exercised their right to removal as soon as it was created. *Cf. Heniford v. American Motors Sales Corp.*, 471 F.Supp. 328, 336 (D.S.C.1979) (removal permitted after closing arguments, when right to removal was first created); *Manas y Pineiro v. Chase Manhattan Bank, N. A.*, 443 F.Supp. 418, 420–21 (S.D.N.Y.1978) (even though statute permits removal any time before trial, case was remanded to state court because petitioners had chosen to begin litigation on the merits before removing the case to federal court). Moreover, the defendants effectively attempted to remove the action five years ago when they sought to enforce the promissory note. As noted above, IMH successfully moved to stay that action pending the outcome of the state court litigation. IMH, therefore, is in no position to argue that the defendants waived their right to removal.

Accordingly, the motion to remand is denied.

*Motion to Confirm and Cross-Motion to Vacate the Arbitration Award*

The complaint filed by IMH in state court contains seven causes of action. The first three concern the Credit Agreement and the claim that it was obtained by economic duress. The fourth through sixth causes of action involve allegations that Atlanta delayed in unloading the vessels at Saudi Arabia and, thereby, damaged IMH. The seventh cause of action is for punitive damages.[10] Prior to filing an answer, Atlanta made a motion to compel arbitration pursuant to the Federal Arbitration Act.[11] Then, in its answer, Atlanta included an affirmative defense of arbitration and a counterclaim for monies due for, *inter alia*, freight under the Liner Booking Note. At the

---

9. There is a considerable question as to whether this Court has the power to remand under these circumstances. *See Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 345 & n.9, 96 S.Ct. 584, 590 n.9, 46 L.Ed.2d 542 (1976) (the exclusive grounds for remanding a case to state court are established by section 1447(c)). We need not address this issue, however, for we have concluded that remand is not warranted.

10. Whether this is truly a separate cause of action, as opposed to an additional damage claim, is doubtful. The only additional allegation contained in the seventh count is that the acts recited in the other six causes of action were done maliciously and wilfully with the intent to injure.

11. It also commenced the federal court action referred to above.

time, the motion to compel arbitration was still *sub judice.* In opposing that motion, IMH argued that Atlanta had waived its arbitration rights under the Liner Booking Note. (Neither the Credit Agreement nor its attendant promissory note . contain an arbitration provision.)

On May 18, 1977, the New York court issued a decision granting Atlanta's motion to compel arbitration with respect to the damages allegedly caused by delays in unloading. The order to arbitrate was appealed by IMH, but the Appellate Division upheld the order to the extent that it directed arbitration of issues properly arising under the Liner Booking Note.[12] The Appellate Division specifically rejected an argument by IMH that Atlanta had waived its arbitration rights by, *inter alia,* asserting a counterclaim. The Appellate Division noted that when one is sued on a mixture of arbitrable and nonarbitrable claims, one must be permitted to protect oneself against the nonarbitrable claims by asserting counterclaims without putting at risk the right to arbitrate the other claims.[13] Although IMH appealed this decision, the Court of Appeals affirmed the lower courts in relevant part.[14]

The Court of Appeals decision did not lead to a prompt commencement of arbitration. Even after the decision, several years passed before the arbitrators appointed by IMH appeared for the hearings. Indeed, on one occasion when IMH could obtain no further adjournment of the hearings, it resorted to state court for a temporary restraining order preventing the arbitration from going forward. In the interim, however, the parties did submit memoranda setting forth their claims. Although Atlanta did not then indicate a desire to have its freight claim arbitrated, it did reserve its right to amend its claims at any time before the first substantive hearing.

A substantive hearing was finally held on April 21, 1982, with the full panel and both parties in attendance. The parties disputed the scope of the arbitration. IMH attempted to persuade the panel that the court order directing arbitration prevented the panel from considering any of Atlanta's claims against IMH. The panel rejected this claim, stating that it unanimously found that

> under the terms of the Booking Note, any disputes are to be settled by Arbitration. This includes the claims of IMH for delays suffered resulting in their alleged losses. It also includes any claims by Atlanta for any breaches proven by them to have been made by IMH.
>
> The panel finds that the ruling of the State Court was intended to separate the arbitrable claims of IMH from the nonarbitrable claims under the credit agreement, but did not specifically preclude the Panel from hearing the merits of Atlanta's claims.

Atlanta then requested a Partial Final Award concerning the unpaid ocean freight. The Chairman of the Panel indicated that the payment of freight in admiralty is "sacred" and that there are very few defenses to such a claim. He asked IMH's counsel whether the freight had been paid. IMH's counsel refused to take a position on that matter, claiming an absence of knowledge. (This was a curious response given IMH's acknowledgment, five years earlier in a reply brief in the state court litigation, that the freight had not been paid. In fact, the facts and course of the litigation clearly indicate that the freight has not been paid; were the opposite true, these cases would almost certainly no longer be pending.) IMH's counsel requested a week to prepare

---

**12.** The order was modified to exclude from arbitration, as a matter of public policy, the punitive damage claim. An additional reason for not referring that claim to arbitration is that it rested in part on the first three causes of action, which were not arbitrable in any event.

**13.** There was a dissent to this opinion.

**14.** The lower court orders were modified to the extent that a stay of proceedings against the additional defendant, Marine Transport Overseas, Inc., Atlanta's agent, was stricken because the agent was not a party to the arbitration agreement. (They could hardly have had much involvement in unloading delays in any event.)

a defense to the claim of unpaid freight. The arbitrators, perhaps suspecting that this was a further attempt at delay, gave him only a day to determine whether payment had been made. IMH's counsel then submitted a lengthy letter that addressed not the factual issue, but the propriety of the Panel's consideration of the issue. The Panel then issued a Partial Final Award in Atlanta's favor for unpaid ocean freight.[15]

In opposing the confirmation of the arbitration award, IMH makes a number of arguments:

1) that the arbitrators exceeded their powers by hearing the claim and making an award thereon;

2) that the Court should, as a matter of comity, refuse to confirm the award because Atlanta procured it as a means of avoiding state court discovery sanctions;[16]

3) that Atlanta waived its right to arbitration of the freight claims by failing to submit them to the arbitrators; and

4) that the arbitrators denied IMH due process by refusing to grant a longer adjournment before deciding the freight claim.

The Federal Arbitration Act (Act) reflects a federal policy in favor of arbitration as an alternative to litigation. Thus, judicial review of an arbitration award is extremely narrow. An award may be upset by a court only on the grounds enumerated in sections 10 and 11 of the Act. 9 U.S.C. § 9 (1976).

Under section 10 of the Act, an award may be vacated if: (a) "the award was procured by corruption, fraud, or undue means;" (b) "there was evident partiality or corruption in the arbitrators;" (c) "the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;" and (d) "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." *Id.* § 10 (1976).

Section 11 of the Act allows the court to modify or correct the award if: (a) "there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award;" (b) "the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted;" and (c) "the award is imperfect in matter of form not affecting the merits of the controversy." *Id.* § 11 (1976).

The arbitration clause involved in the Liner Booking Note is quite broad. It provides that any dispute arising from the contract should be settled by arbitration. The issue of whether Atlanta waived its ability to arbitrate by litigating has been thoroughly reviewed by three levels of the New York State courts. It should not be reconsidered by this Court. It is quite clear that the defensive assertion of counterclaims against claims that are only in part arbitrable and in part not does not constitute a waiver. The arbitrators, therefore, did not exceed their powers by agreeing to hear Atlanta's claims.

The issue of whether the freight claim was waived within the arbitration itself has never been passed upon by the state courts for obvious reasons. It is apparent from its arguments, however, that IMH does not understand the arbitration procedures. This was not an arbitration submitted pursuant to a binding submission agreement[17]

---

**15.** The award was initially unanimous. One of the arbitrators appointed by IMH ultimately dissented, however, on the basis of the issues raised by IMH's counsel.

**16.** IMH notes that, although Atlanta had earlier submitted to arbitration two other affirmative claims, Atlanta did not assert the freight claim until after IMH had moved to strike its answer for further discovery abuses.

**17.** A submission agreement is a document, signed and submitted by both parties to the arbitration, that delimits and delegates specific authority to the arbitrator(s). *See Carr v.*

of the parties. It was a matter referred to arbitration by the state courts.[18] Although the parties made earlier informal submissions of the claims to be considered, these were to partial panels and with reservations of rights. A fully constituted panel, prepared to hear substantive matters, first sat on April 21, 1982, when Atlanta submitted the freight issue. (Atlanta's earlier submission of affirmative claims was to a panel of only three of five arbitrators at an *ex parte* hearing attended by neither IMH nor the arbitrators it selected.) Moreover, the question of waiver appears to be an issue for the arbitrators. *See World Brilliance Corp. v. Bethlehem Steel Co.,* 342 F.2d 362, 364–65 (2d Cir. 1965); *Gallo Wine Sales of New Jersey, Inc. v. Wholesale Wine Salesmen's Union,* 511 F.Supp. 785, 792 (S.D.N.Y. 1981). Indeed, the record makes it clear that IMH submitted the question of waiver and the scope of the arbitration to the arbitrators and now objects only to their decision on the matter.

The argument concerning "comity" starts from the erroneous premise that this Court directed the parties to litigate the freight claim in the state court action. It did not. Our decision of June 16, 1977, simply restrained Atlanta from attempting to collect on the promissory note and honored the state court injunction against enforcement of the Credit Agreement, of which the promissory note was a part. We did not consider whether, or where, claims under the Liner Booking Note should be adjudicated. Whatever Atlanta's motives may have been for shifting the focus of its efforts to the arbitration proceeding is of no concern to this Court, and IMH has cited no authority to the contrary. Indeed, it is readily apparent that everything involved in the Liner Booking Note belonged in the arbitration to begin with. In fact, if the

answer and counterclaim had been filed before the motion to compel arbitration, the state court would have specifically directed that the issue of freight charges be a part of the arbitration as well.

The final question is whether the arbitrators, by granting only a one-day delay, rather than the week that was requested, were guilty of misconduct under section 10(c) of the Act. It has been said that

> the expeditious resolution of a dispute remains one of the principal purposes for referring the matter to arbitration, and the statute limits the Court's review to a determination as to whether the arbitrators were guilty of *misconduct* in refusing a postponement. As such, it follows that arbitrators are to be accorded a degree of discretion in exercising their judgment with respect to a requested postponement. Therefore, assuming there exists a reasonable basis for the arbitrators' considered decision not to grant a postponement, the Court will be reluctant to interfere with the award on these grounds.

*Fairchild & Co., Inc. v. Richmond F. & P. R. Co.,* 516 F.Supp. 1305, 1313–14 (D.D.C.1981).

In this instance, it was clear to all involved that IMH's counsel was not being candid with the arbitrators. He knew perfectly well that the freight had not been paid. IMH has not suggested to this date what purpose could have been served by giving it a longer adjournment to consider the issue. It asserts merely the same legal arguments that it made before the arbitration panel. These arguments were rejected then and are rejected now.[19] Clearly, there was no misconduct by the arbitrators in making a partial award on what is an undisputed factual issue. Judgment will therefore issue for Atlanta on civil action 82

---

*American Insurance Co.,* 152 F.Supp. 700, 702 (E.D.Tenn.1957).

**18.** The parties agree, although there seems to be a dearth of authority, that the fact that the matter was referred to arbitration by a state court does not prevent confirmation of the award in the federal courts pursuant to the Federal Arbitration Act, 9 U.S.C. § 9 (1976).

**19.** IMH has not argued in this proceeding that enforcement of the Partial Final Award should be stayed until the completion of all arbitration, on the theory that success by IMH on the other issues might reduce the total amount of the award to Atlanta.

Civ. 2777, and civil action 82 Civ. 2800 (brought to vacate the award) is dismissed.

*Motion for Default Judgment Against Atlanta For Failure to Obey Discovery Orders*

As mentioned above, the state litigation has been hopelessly bogged down in discovery disputes. In the sixty-four months of litigation, there were seven orders directing Atlanta to comply with various discovery requests. Some of these were appealed. While the initial discovery disputes involved a variety of procedural objections, the more recent disputes have centered on Atlanta's unwillingness to disclose the names of its principals or produce them for depositions. The applicable Swiss law permits a certain degree of confidentiality in this sort of matter. The final state court order apparently attempts to avoid the obstacles presented by Swiss law by simply directing Atlanta to produce the "true principals in control of said defendant in order to determine their role in the events at issue in this action."

This decision by a judge of the New York Supreme Court was signed on May 11, 1982, but was not filed until May 13, two days later. In the interim, on May 12, the action was removed to federal court. The order provides that the depositions were to be carried out "within 60 days after service of copy of this order w/ notice of entry thereof. Justice in Special Term Part II at time of EBTs shall preside over such EBTs as may be necessary in the discretion of such Justice." On May 25, 1982, IMH served a notice of entry on Atlanta.

Atlanta contends that the order is "void" because it was not "entered" until after the action had been removed. It further argues that IMH failed to follow the procedures dictated by an earlier order and that

the judge erred in entering the orders because the discovery sought is irrelevant.[20]

When actions are removed from state to federal court, "[a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." 28 U.S.C. § 1450 (1976). It is quite clear that, when a state action is removed, the federal court takes it "in the posture in which it existed when removed from [the] state court's jurisdiction and must give effect to all actions and procedures accomplished in [the] state court prior to removal." *Istituto Per Lo Sviluppo Economico Dell' Italia Meridionale v. Sperti Products, Inc.,* 47 F.R.D. 310, 312 (S.D.N.Y.1969). *See generally* 1A J. Moore & J. Wicker, Moore's Federal Practice ¶ 0.1681[4.–5] at 547–52 (2d ed. 1982). The initial question, therefore, is whether the decision, made before removal but not filed until after it, constitutes an action "accomplished" prior to removal. In addition, because written notice may be required to perfect an order under New York law, *McCormick v. Mars Associates, Inc.,* 25 A.D.2d 433, 265 N.Y.S.2d 1004 (2d Dep't 1966), a further consideration is that the order was not self-effecting, but rather required service on the adversary party with notice of entry.

IMH argues that the rendering of the order constitutes the judicial act and that the entry is merely ministerial, evidencing what the court has done. *See, e.g., Cornell v. Cornell,* 7 N.Y.2d 164, 168, 196 N.Y.S.2d 98, 164 N.E.2d 395 (1959); *Voccola v. Shilling,* 88 Misc.2d 103, 388 N.Y.S.2d 71, 75 (Sup.Ct.1976), *aff'd on opinion below,* 57 A.D.2d 931, 394 N.Y.S.2d 577 (2d Dep't 1977); *Dowling v. Stephan,* 206 Misc. 518, 522, 133 N.Y.S.2d 667, 672 (Sup.Ct.1954).[21] Atlanta responds that New York CPLR

**20.** Atlanta contends that, had the action not been removed, it would have sought reargument of the decision. (Based on its past performance, it probably would have appealed the order if it failed to obtain a favorable ruling on reargument.) It further argues that, if the order had not been voided, it would have sought "reargument" before this Court. By virtue of

the instant motions, Atlanta has obtained *de facto* just such a reargument.

**21.** With respect to the claimed loss of the right to appeal, IMH points out that Atlanta voluntarily lost that by removing the action and that, as to a reargument, they were already on notice that this Court had indicated it would enforce the state orders.

§ 2220 provides that orders must be entered to be valid: they must be filed in the office of the Clerk of the court in which the action is triable. N.Y.Civ.Prac.Law & R. § 2220 (McKinney 1974). Atlanta further argues that because the order requires depositions to be taken under the supervision of a Special Term Part II Justice of the New York State courts, it could not be literally complied with after the removal.

In the opinion of this Court, at the time of removal the decision of the New York court had been made within the meaning of 28 U.S.C. § 1450 yet had not become effective. Even if we are wrong on the latter conclusion, the failure of Atlanta to comply under these clouded circumstances is not sufficient to warrant dismissal.[22]

█ Even if our initial conclusion that the issue had been decided before removal is wrong, we are certainly not going to reconsider all of the matters previously litigated in the state court. Atlanta argues vigorously that the discovery sought· by IMH is irrelevant to the action and should never have been directed. On the appeal from the previous discovery order, the Appellate Division concluded that IMH's inability to discover who made policy for Atlanta and other important details concerning the agreement under attack was a direct consequence of Atlanta's planned pattern of delay. Thereafter, the trial court, in issuing the order under consideration here, rejected the same relevancy arguments that Atlanta continues to make. In the interests of comity (if not collateral estoppel), this Court will simply not listen to those arguments. Rather, the Court adopts the order of the New York State Supreme Court dated May 11, 1982, and directs Atlanta to comply therewith within thirty (30) days, or risk the sanctions described therein.

### The Motion to Stay

Atlanta's motion to stay is based upon the possibility of inconsistent decisions in the arbitration and in one of the actions pending before this Court. In theory, there should be no such inconsistency. The arbitration concerns the Liner Booking Note, whereas the actions before the Court (excluding those relating to the arbitration award) concern the Credit Agreement and the promissory note. Consequently, the issues in one forum should be different from those in the other.

In fact, however, there are several critical overlapping or linking issues. For example, because the existence of an oral agreement would affect the enforceability of certain terms of the Liner Booking Note, the arbitrators must decide whether an oral agreement to extend the time for payment under that note was made on February 11, 1977. At the same time, the issue of the alleged oral agreement is critical to IMH's claim of duress with respect to the Credit Agreement because the need for the latter would be obviated by the existence of the former. Moreover, the claims for unloading delays involve an "addendum," which, although separate from the Credit Agreement, arose from some of the same factual considerations.

The parties debate how many of these issues are properly before the arbitrators, but that question is not before this Court. A theoretical possibility of inconsistent findings exists; however, the arbitration has been completed and a decision is expected in a month. A decision on the merits of the remaining cases will not be made before then. Based on the speed with which the actions to confirm and vacate the Partial Award were made, we anticipate that the final arbitration award will be before this Court before the other cases are decided.

Of course, it is quite clear that what Atlanta fears is a judgment against it on

---

**22.** We reject the argument that Atlanta's previous (and perhaps continued) refusals to give discovery were justified as dutiful adherence to the relevant Swiss penal law. The order in question, by merely directing Atlanta's principals to appear and by holding that their refusal to appear would be deemed the corporation's refusal to appear, avoids any problems with the Swiss law.

the removal action for failure to make discovery because IMH will argue that the judgment collaterally estops Atlanta from enforcing any arbitration award it may obtain. This issue, however, is not presently before this Court. Consequently, the motion for a stay is denied, without prejudice to further proceedings at an appropriate time.

*Motion to Dismiss*

The motion to dismiss borders on the frivolous. In the arbitration, IMH as argued that certain actions taken by Atlanta did not conform to the terms of the Credit Agreement. In taking that position, however, IMH made it clear that it believed the Credit Agreement had been obtained by economic duress and that it was suing to avoid it. It stated quite clearly that any reliance on the terms of the Credit Agreement was *not* a waiver of its litigation position concerning the invalidity of the Credit Agreement.

 As indicated in the preceding section, there is some unfortunate overlapping of issues between the arbitration and the litigation. Just as Atlanta was compelled to assert a counterclaim concerning a matter properly involved in the arbitration in the state court litigation, IMH, which cannot predict the outcome of the litigation, must resort to alternative positions in the arbitration. This does not constitute bad faith. It does not support the motion for dismissal by judicial estoppel. That motion is denied.

*Conclusion*

The following is a summary of the Court's disposition of the pending motions:

1. The motion to remand civil action 82 Civ. 3081 is denied.

2. Atlanta's motion to confirm the Partial Final Award in the amount of $2,012,-500 is granted. Judgment may be entered thereon in civil action 82 Civ. 2777.

3. IMH's cross-motion to vacate the arbitration award is denied and civil action 82 Civ. 2800 is dismissed.

4. In civil action 82 Civ. 3081, IMH's motion for discovery sanctions against Atlanta is granted to the extent specified above.

5. Atlanta's motion for a stay of litigation pending completion of the arbitration proceedings is denied.

6. Atlanta's motion to dismiss civil action 82 Civ. 3081 is denied.

7. The parties are directed to consider whether, in light of the posture of the other actions, there is any need to continue civil action 77 Civ. 1471 (which is presently on the suspense calendar of the Court) and, if so, whether that action should be consolidated with the action recently removed to this Court.

SO ORDERED.