Angelia JENKINS, Individually and as Administratrix of the Estate of her Deceased Child, Tameshia Sutton, Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PENNSYLVANIA, McKenzie Tank Lines, Inc., and Elbert LeSueur Grier, Defendants.

Civ. A. No. C86–1891A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 19, 1986.

---

Anne E. Barnes, Smolar, Pelletier & Roseman, Atlanta, Ga., for plaintiff.

Robert E. Corry, Jr., Dennis & Corry, Atlanta, Ga., for defendants.

## ORDER

FORRESTER, District Judge.

This action is before the court on the plaintiff's motion to remand the case to the Superior Court of Fulton County, Georgia. The case originally was brought in the Superior Court of Fulton County on May 1, 1986 against National Union Fire Insurance Company, McKenzie Tank Lines, and Elbert LeSueur Grier. The defendants are the insurer, owner, and driver, respectively, of a tractor-trailer truck involved in a collision in Mitchell County, Georgia that resulted in the death of the plaintiff's young child. By an order dated July 28, 1986, the Superior Court of Fulton County concluded that it lacked personal jurisdiction over defendants McKenzie Tank Lines and Elbert LeSueur Grier, that venue as to them was improper, and that they were not properly sued in the Superior Court of Fulton County. The state court therefore granted the motions of McKenzie Tank Lines and Mr. Grier to transfer the action to the Superior Court of Mitchell County, thereby leaving

National Union Fire Insurance Company as the sole defendant in the Fulton County action. Relying on 28 U.S.C. § 1446(b), National Union Fire Insurance Company petitioned this court for removal on August 28, 1986, and posted the requisite removal bond. The plaintiff now moves to remand the action to the Superior Court of Fulton County, pursuant to 28 U.S.C. § 1447(c), on the grounds that the case was removed improvidently and without jurisdiction. A thorough analysis of the case law on removal and remand leads the court to conclude that the plaintiff's motion to remand should be GRANTED.

The literal language of 28 U.S.C. § 1446(b) would not appear to support the plaintiff's motion to remand. The statute reads:

> If the case stated by the initial pleading is not removable, a petition for removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

Here, the defendant filed its petition for removal promptly upon receiving the order from which it could be ascertained that the case had become removable, i.e., the state court's order transferring venue as to the two resident defendants to Mitchell County. The statute itself gives no indication that removal in such a case is improper.

However, the plaintiff's motion to remand is not based on the terms of the statute but on a straightforward application of the long-standing, judicially-created "voluntary-involuntary rule." In a diversity case, the voluntary-involuntary rule states: "if the resident defendant was dismissed from the case by the voluntary act of the plaintiff, the case became removable, but if the dismissal was the result of either the defendant's or the court's acting against the wish of the plaintiff, the case could not be removed." *Weems v. Louis Dreyfus Corp.*, 380 F.2d 545, 546 (5th Cir. 1967), quoting Note, The Effect of Section 1446(b) on the Non-Resident's Right to Remove, 115 U.Pa.L.R. 264, 267 (1966). *See also Whitcomb v. Smithson,* 175 U.S. 635, 638, 20 S.Ct. 248, 250, 44 L.Ed. 303 (1900).

Section 1446(b) has been interpreted to preserve the voluntary-involuntary rule. *See Weems,* 380 F.2d at 548–49; Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* (1985) § 3723 at 317–18; 1A *Moore's Federal Practice* ¶ 0.168[3.–5–6] at 597.

█ The defendant argues that the voluntary-involuntary rule does not apply in this case because the transfer of venue that resulted in complete diversity in Fulton County was a voluntary action by the plaintiff. The argument is unpersuasive. That the transfer order gave the plaintiff the "option" of paying the transfer fees does not render the transfer voluntary; failure to pay the fees would not have resulted in continued proceedings against all three defendants in Fulton County. Instead, the plaintiff's failure to pay the transfer fees would have resulted in dismissal. Order on Motion to Dismiss at 2, 3. The transfer of venue was not due to any voluntary act of the plaintiff but was instead "the result of either the defendant's or the court's acting against the wish of the plaintiff." *Weems,* 380 F.2d at 546.

The defendant also argues that the voluntary-involuntary rule does not apply in this case because the underlying rationale or justification for the rule is not present here. The rule's justification, argues the defendant, is a desire to avoid removal to federal court where the removal is premised on developments in the state court that could later be reversed by the state appellate court. In the case that is perhaps the most often cited on this issue, the former Fifth Circuit offered the finality/appealability rationale as one of the rule's virtues:

> Although the rule has often been criticized for failing to explicate an underlying rationale, it nevertheless has merit in that it prevents removal of those cases in which the issue of the resident defendant's dismissal has not been finally determined in the state courts. This avoids

the duplication and expense which would result if a resident defendant was dismissed on an appealable ground, the nonresident was permitted to remove, and the plaintiff then obtained a reversal of the dismissal in the state appellate courts. On the other hand, that danger does not arise where a plaintiff voluntarily drops a resident defendant since appeal then is not available, and the elimination of the resident defendant from the case is final.

*Weems*, 380 F.2d at 546 (citations omitted).

A number of recent cases go further than *Weems*, holding that the finality/appealability rationale is synonymous with the voluntary-involuntary rule. *See Burke v. General Motors Corp.*, 492 F.Supp. 506, 508 (N.D.Ala.1980) (the voluntary-involuntary rule "is premised upon the assumption that voluntary actions of the plaintiff which remove a party from a case are final."); *Quinn v. Aetna Life and Casualty Company*, 616 F.2d 38, 40 n. 2 (2d Cir.1980) (The purpose of the voluntary-involuntary distinction "is to protect against the possibility that a party might secure a reversal on appeal in state court of the non-diverse party's dismissal producing renewed lack of complete diversity in the state court action"); *LGP Gem, Ltd. v. Cohen*, 636 F.Supp. 881, 883 (S.D.N.Y.1986) ("The reasoning of the *Weems* decision . . . indicates that the finality of the dismissal, not the plaintiff's participation in it, is the factor that determines removability."); *Atlanta Shipping Corp. v. International Modular Housing, Inc.*, 547 F.Supp. 1356, 1360 (S.D.N.Y.1982) ("An involuntary dismissal of the non-diverse party in a state court action should not lead to removal of the action to federal court if the complete diversity just created by the dismissal might be destroyed by an appeal and reversal of the state court's decision."); *Ennis v. Queen Insurance Company of America*, 364 F.Supp. 964, 966 (W.D.Tenn.1973) ("The reason for the 'voluntary dismissal' rule is based on judicial efficiency. The voluntary dismissal of a resident defendant is not appealable. Such a dismissal finally determines who are the parties to the ac-

tion in a state court proceeding immediately prior to removal to a federal court. The involuntary dismissal of a resident defendant, however, is appealable. Thus, an involuntary dismissal would involve the possibility of duplication and expense of an appeal being heard in state courts and the same proceeding being before the federal courts at the same time, if such a case could be removed to the federal courts."). *Accord* Wright, Miller & Cooper, § 3723 at 316–17.

As a result of this equating of finality with voluntariness, courts have permitted removal where, as here, the order of the state court that results in complete diversity is not due to the plaintiff's voluntary action but is nevertheless final. *See Quinn v. Aetna Life and Casualty Company*, 616 F.2d 38, 40 n. 2 (2d Cir.1980) (removal was proper where, at the time of removal, the deadline for the plaintiffs to appeal the state court action had passed without an appeal being taken; the "plaintiffs' failure to take an appeal constituted the functional equivalent of a 'voluntary' dismissal"); *Atlanta Shipping Corp. v. International Modular Housing, Inc.*, 547 F.Supp. 1356, 1360 (S.D.N.Y.1982) ("Where the possibility of . . . appeal no longer exists, as, for example, in *Quinn*, where timely appeal was barred by the statute of limitations, removal can be allowed").

■ If the *Quinn* case and others like it are correctly decided, removal would be proper here. There is no possibility of a duplication of proceedings in this case. Because the order transferring venue entered judgment as to fewer than all of the claims or parties in the Fulton County action it was not a final judgment under O.C.G.A. § 5–6–34(a)(1). *See Wise v. Georgia State Board for Examination, Qualification and Registration of Architects*, 244 Ga. 449, 260 S.E.2d 477 (1979). As a result, in order for an appeal to be possible, it would have been necessary for the plaintiffs to request certification from the trial judge, within ten days of entry of the order, that it was of such importance to the case that

immediate review should be had. O.C.G.A. § 5–6–34(b). The ten-day period has long since run and there is no indication in the record that an appeal was attempted or allowed. Of course, an appeal of the transfer order at the conclusion of the Mitchell County proceedings would not be possible; the venue objection would have been waived by the plaintiff's failure to raise it earlier. *See Shaheen v. Dunaway Drug Stores,* 246 Ga. 790, 793, 273 S.E.2d 158 (1980). The plaintiff here is therefore in the same position as the plaintiffs in *Quinn,* 616 F.2d at 40 n. 2, where the time to take an appeal from the involuntary dismissal of the non-diverse defendants had long passed and the failure to take an appeal was held to constitute "the functional equivalent of a 'voluntary' dismissal."

■ Removal is not proper here, however, because the above discussed cases are simply incorrect. Study of the Supreme Court cases that developed the rule discloses that the voluntary-involuntary rule is not based upon an appealability/finality rationale. The early history of the voluntary-involuntary rule was summarized in *Weems:*

> The rule that a case non-removable on the initial pleadings could become removable only pursuant to a voluntary act of the plaintiff originated in two early Supreme Court cases. The first was *Powers v. Chesapeake and O. Ry.,* 169 U.S. 92, 18 S.Ct. 264, 42 L.Ed. 673 (1898), where ... [t]he Court held that a nonresident defendant can remove as soon "as the action assumes the shape of a removable case in the court in which it was brought," 169 U.S. at 101, 18 S.Ct. at 267, and concluded that the case had become removable for the first time when the plaintiff discontinued his action against the individual resident defendants.
>
> Although the Court in *Powers* did not emphasize that the resident defendant's dismissal resulted from an act voluntary to the plaintiff, that aspect was seized upon in *Whitcomb v. Smithson,* 175 U.S. 635, 20 S.Ct. 248, 44 L.Ed. 303 (1900), and

applied to firmly establish the voluntary-involuntary rule. In *Whitcomb,* the elimination from the case of the resident defendant was accomplished not by the plaintiff's voluntary act but rather by a directed verdict. The Court held that since the resident defendant was eliminated from the case without the plaintiff's consent, the case did not become removable. *Accord, Kansas City Suburban Belt Ry. Co. v. Herman,* 187 U.S. 63, 23 S.Ct. 24, 47 L.Ed. 76 (1902). Later cases agreed that the crucial point on which Powers had turned was the voluntariness of the plaintiff's act, and the rule that an action non-removable when commenced may become removable thereafter only by the voluntary act of the plaintiff was solidified. *See Great No. Ry. Co. v. Alexander,* 246 U.S. 276, 281, 38 S.Ct. 237 [239], 62 L.Ed. 713 (1918); *American Car & Foundry Co. v. Kettelhake,* 236 U.S. 311, 316, 35 S.Ct. 355 [356], 59 L.Ed. 594 (1915).

380 F.2d at 547.

The above passage from *Weems* cites four Supreme Court decisions in which removal was held improper: *Whitcomb, Herman, Kettelhake,* and *Alexander.* Lack of finality could not have been the rationale for the voluntary-involuntary distinction developed and applied in those cases because the state court action that arguably made the cases removable had been affirmed by or had originated in the state's highest court in three of the four cases cited. No appeal was possible within the state courts and, therefore, no possibility of a duplication of proceedings existed, yet the United States Supreme Court denied removal. In *Whitcomb,* the directed verdict on which the defendant relied to justify removal had been appealed to and affirmed by the Supreme Court of Minnesota. 175 U.S. at 636–37, 20 S.Ct. at 249. In *Herman,* the state court's order sustaining the resident defendant's demurrer and its order denying the non-resident defendant's application for removal was appealed to and affirmed by the Supreme Court of Kansas. 187 U.S. at 66, 23 S.Ct. at 25. In

*Alexander*, the order denying the non-resident defendant's application for removal originated in the Supreme Court of Montana. 246 U.S. at 279, 38 S.Ct. at 238–39.

*Kettelhake* is the only case in which the order relied upon by the non-resident defendant to justify removal was not yet final in the state courts. *Kettelhake* is also the only Supreme Court case in which appealability and finality are discussed in connection with the voluntary-involuntary rule, and the Court made it clear that lack of finality in the state courts was not synonymous with involuntariness but was instead a separate ground for denying removal.

> [W]here there is a joint cause of action against defendants resident of the same State with the plaintiff and a non-resident defendant, it must appear to make the case a removable one as to a non-resident defendant because of dismissal as to resident defendants that the discontinuance as to such defendants was voluntary on the part of the plaintiff, *and* that such action has taken the resident defendants out of the case, so as to leave a controversy wholly between the plaintiff and the non-resident defendant. We do not think that situation is shown by this record.

236 U.S. at 316, 35 S.Ct. at 356 (emphasis added). *See also Lathrop, Shea and Henwood Company v. Interior Construction Company*, 215 U.S. 246, 249, 30 S.Ct. 76, 77, 54 L.Ed. 177 (1909) (judgment dismissing action as to resident defendant affirmed by New York Appellate Division; removal denied by U.S. Supreme Court).

■ Though most of the Supreme Court cases discussing the voluntary-involuntary rule contain no discussion of the rule's rationale, the few cases that do contain such a discussion point to a policy much different from the appealability/finality rationale. After summarizing the voluntary-involuntary rule cases, including *Powers, Herman, Lathrop, Shea and Henwood Company*, and *Kettelhake*, the Supreme Court in *Alexander* stated:

> The obvious principle of these decisions is that, in the absence of a fraudulent purpose to defeat removal, the plaintiff may by the allegations of his complaint determine the status with respect to removability of a case, arising under a law of the United States, when it is commenced, and that *this power to determine the removability of his case continues with the plaintiff throughout the litigation,* so that whether such a case non-removable when commenced shall afterwards become removable depends not upon what the defendant may allege or prove or what the court may, after hearing upon the merits, *in invitum,* order, but *solely upon the form which the plaintiff by his voluntary action shall give to the pleadings* in the case as it progresses towards a conclusion.

246 U.S. at 282, 38 S.Ct. at 239–40 (emphasis added).[1] *See also Chesapeake and Ohio Ry. Company v. Dixon*, 179 U.S. 131, 138, 21 S.Ct. 67, 70, 45 L.Ed. 121 (1900); *Alabama So. Ry. v. Thompson*, 200 U.S. 206, 216, 26 S.Ct. 161, 164, 50 L.Ed. 441 (1906).

What emerges from an examination of the Supreme Court cases on the voluntary-involuntary rule is the conclusion that the rule is not based upon an appealability/finality rationale but upon a policy favoring the plaintiff's "power to determine the removability of his case." It could perhaps be argued that the policy is antiquated or arbitrary, but the Supreme Court has never expressed dissatisfaction with the only justification it ever offered for the voluntary-involuntary rule. More importantly, whatever the actual justification for the volun-

---

1. Contrary to the defendant's argument, the traditional voluntary-involuntary rule does not permit a plaintiff purposely to plead jurisdiction improperly in order to avoid removal. The rule has always been subject to an exception for fraudulent joinder for the purpose of defeating removal. *See Alexander*, 246 U.S. at 282, 38 S.Ct. at 240; Wright, Miller & Cooper, § 3723 at 315–16. A similar exception for fraudulent venue should also be enforced. The defendant in this case has neither pleaded nor proved that the plaintiff fraudulently pleaded venue improperly in order to defeat removal.

tary-involuntary rule, the Supreme Court cases make it clear that finality is *not* synonymous with voluntariness. Otherwise, removal should have been allowed in *Whitcomb, Herman, Lathrop, Shea and Henwood Company*, and *Alexander*.

As discussed above, the transfer of venue in this case that resulted in complete diversity was not due to any voluntary act of the plaintiff. The plaintiff's motion to remand the case to the Superior Court of Fulton County, Georgia is therefore GRANTED. Pursuant to 28 U.S.C. § 1447(c) the Clerk of Court is DIRECTED to mail to the Clerk of the Superior Court of Fulton County a copy of this order of remand so that the state court may thereupon proceed with the case. Pursuant to 28 U.S.C. § 1446(d) the defendant will pay all costs and disbursements incurred by reason of the removal proceedings.