Albert M. KLEIN, on behalf, himself and all other persons similarly situated, Plaintiff,

v.

AMFAC, INC., Richard L. Griffith, Donald C. Onasch, Robert H. Ozaki and Richard A. Naille, II, Defendants.

Trust Under the WILL OF Samuel Adason JAFFEE, by the Trustee Alan R. KAHN, Plaintiff,

v.

AMFAC, INC., Richard L. Griffith, Donald C. Onasch, Robert H. Ozaki and Richard A. Naille, II, Defendants.

Herbert BEHRENS, Plaintiff,

v.

AMFAC, INC., Richard L. Griffith, Donald C. Onasch, Robert H. Ozaki and Richard A. Naille, II, Defendants.

Karen WOODROW, Plaintiff,

v.

Richard L. GRIFFITH, Donald C. Onasch, Robert H. Ozaki, Richard A. Naille, II and Amfac, Inc., Defendants.

Harry LEWIS, on behalf of himself and all persons similarly situated and on behalf of the general public, Plaintiff,

v.

Richard L. GRIFFITH, Donald C. Onasch, Robert H. Ozaki, Richard A. Naille, II and Amfac, Inc., Defendants.

Nos. C–88–2242–WWS, C–88–2246–WWS, C–88–2241–WWS, C–88–2244–WWS and C–88–2245–WWS.

United States District Court, N.D. California.

July 26, 1988.

**1416**

Paul F. Bennett, Solomon B. Cera, Law Offices of David B. Gold, San Francisco, Cal., for Herbert Behrens.

David C. Gold, San Francisco, Cal., Neil L. Selinger, Lowey, Dannenberg & Knapp, New York City, for Albert M. Klein.

Paul S. Rosenstein, Oakland, Cal., for Karen Woodrow and Harry Lewis.

David B. Gold, Paul F. Bennett, Solomon B. Cera, San Francisco, Cal., Wolf, Haldenstein, Adler, Freeman & Herz, Daniel Kransner, David Brauer, New York City, for Samuel Adason Jaffe, Trust Under Will of Alan R. Khan, Trustee.

McCutchen, Doyle, Brown & Enersen, Loyd W. McCormick, Samuel D. Hinkle, IV, Gilmur R. Murray, San Francisco, Cal., for defendant Amfac, Inc.

Donald E. Schlotz, Elizabeth M. McQuillan, Armour, St. John, Wilcox, Goodin & Schlotz, San Francisco, Cal., C. Michael Hare, David Schulmeister, Anne L. Sylvester, Cades, Schutte, Fleming & Wright, Honolulu, Hawaii, for defendants Griffith, Onasch, Ozaki and Naille.

### MEMORANDUM OF OPINION AND ORDER

SCHWARZER, District Judge.

These actions were commenced in state court on and about May 20, 1988. They allege breaches of fiduciary duties by defendants in connection with a proposed leveraged buy-out. Defendant Amfac, Inc., filed its petition for removal to this Court on June 6, 1988.[1] Plaintiffs have previously moved to remand and Amfac has filed its opposition. While that motion is not currently calendared, the Court has a duty to determine *sua sponte* whether it has subject matter jurisdiction.

Under 28 U.S.C. § 1441, this Court has removal jurisdiction based on diversity of cases of which it would have had original jurisdiction. However, 28 U.S.C. § 1441(b) bars removal of an action on the basis of diversity by a citizen of the forum

---

1. Since it does not appear from the file that the other defendants joined in the petition (if they had been served at the time), it may be defective. *Tri–Cities Newspapers, Inc. v. Tri–Cities Printing Pressmen & Assistants Local 349,* 427 F.2d 325, 327 (5th Cir.1970).

state. A corporation is deemed a citizen of both the state of its incorporation and the state of its principal place of business. 28 U.S.C. § 1332(c). Amfac is incorporated under the laws of Hawaii. Until recently it had its principal place of business in California, but over the past few months it has been engaged in liquidating much of its business in California.

■ The burden of establishing removability is Amfac's. See, *General Atomic Co. v. United Nuclear Corp.,* 655 F.2d 968, 968–69 (9th Cir.1981) ("A federal court is presumed to lack jurisdiction ... unless the contrary affirmatively appears.") Amfac's principal contention is that as of the time when the removal petition was filed, it had disposed of the bulk of its California operations and hence had ceased to have its principal place of business in California.

■ For an action to be removable, however, it must meet the statutory requirements as of the time the removal petition is filed *and* as of the time of the commencement of the action in state court (unless plaintiff, by amendment of the pleading or voluntary dismissal of a non-diverse party, has subsequently made the action removable). 1A J.W. Moore, *Federal Practice* 189 (1986) (emphasis added); *see generally* 14A Wright, Miller & Cooper, *Federal Practice and Procedure* § 3723, at 311–12 (1985); *Atlanta Shipping Corp. v. International Modular Housing, Inc.,* 547 F.Supp. 1356, 1360 (S.D.N.Y.1982); *Van Horn v. Western Electric Co.,* 424 F.Supp. 920, 922 (E.D.Mich.1977) (citing cases). Thus, both at the time the action is filed and when it is removed, complete diversity must exist and none of the defendants may be a citizen of the forum state. *Kanzelberger v. Kanzelberger,* 782 F.2d 774, 776–77 (7th Cir.1986); *Kaneshiro v. North Am. Co. for Life & Health,* 496 F.Supp. 452, 455 (D.Hi.1980); *Oliver v. American Motors Corp.,* 616 F.Supp. 714, 716 (E.D.Va.1985) (dictum). A defendant cannot make a case removable by becoming a citizen of another state after the action was filed. *See* Wright, Miller & Cooper § 3723 at 313–14; *Kilpatrick v. Arrow Co.,* 425 F.Supp. 1378, 1380 (W.D.La.1977).

Amfac's reliance on *Local Union 598 v. J.A. Jones Construction Co.,* 846 F.2d 1213, 1215 (9th Cir.1988), is misplaced. The court observed in that case that "removability is generally determined as of the time of the petition for removal," but it did so in the context of determining that defendant had failed to establish that diversity of citizenship existed as of that time. *Id.* at 1215; *see Libhart v. Santa Monica Dairy Co.,* 592 F.2d 1062, 1065 (9th Cir.1979).

It is irrelevant, therefore, whether Amfac's principal place of business had been moved out of California if it was there in May 20, 1988, when the state action was filed.

In determining the location of a corporation's principal place of business in the diversity context, courts have employed three tests:

(1) The "nerve center" test, based on the place where the corporation's executive and administrative functions are located;

(2) The "place of operations" test, based on where most of the corporation's business operations are located; and

(3) The "center of corporate activity" test, based on where, as a practical matter and considering the character of the corporate activities in issue, the principal activity occurs.

*See Co-Efficient Energy Systems v. CSL Industries, Inc.,* 812 F.2d 556 (9th Cir.1987); J. Wagstaffe, *et al., Commencing and Removing Actions to Federal Court* (Rutter 1984) 66–68.

■ It is undisputed that until May 6, 1988, Amfac represented its corporate headquarters and principal place of business to be in California. It did so in its Form 10–K, signed and filed on March 29, 1988, and again in its Memorandum in Support of its Motion to Transfer a case from the Western District of Tennessee to the Northern District of California pursuant to 28 U.S.C. § 1404(a), filed May 6, 1988.

Nevertheless, Amfac contends that as of May 20, 1988, when the first of these actions was filed, its principal place of business had ceased to be in California. It relies on the declaration of its vice-chair-

man Chauncey Schmidt, the substance of which is that since December 1987, when Amfac announced a restructuring plan, it has "sold or entered into commitments to sell most of those mainland United States businesses ... [and substantially completed] the plan to focus most of Amfac's ongoing operations in Hawaii...." The declaration elaborates on various arrangements and prospective arrangements to dispose of mainland properties and operations. It states that "as a result of these recent sales of most of its mainland United States businesses, the ongoing operations of Amfac consist primarily of its two Hawaii-based groups ... and the Fred Harvey division of the Resorts group" and hotels in New Mexico and Los Angeles, and concludes that "Amfac exercises control over all its ongoing businesses from Hawaii."

These generalized and conclusory statements are insufficient to sustain Amfac's burden of proving that its principal place of business was moved from San Francisco to Hawaii between May 6 (or even March 29, 1988) and May 20, 1988. Although Amfac's president and chief executive, its chairman and members of its Board of Directors are located in Hawaii, the evidence presented by plaintiffs, which is undisputed, points to San Francisco as the nerve center and center of corporate activity. Among other things, that evidence shows that Amfac maintains listings in the current San Francisco telephone directory for its executive offices; its audit, communications, law, management services, personnel, and risk management departments; its retail and hotel/resort groups; and its treasurer. Exh. 4 to Decl. of Paul F. Bennett. Moreover, as of mid-June, 1988, Amfac occupied approximately four floors of a downtown San Francisco office building. Bennett Decl. at 2. As for Amfac's restructuring program, it is being implemented by Mr. Schmidt who, since he executed his declaration in San Francisco and is not alleged to be based in Hawaii, presumably operates out of San Francisco.

It may be that the restructuring program has been so successful that by now most of Amfac's assets, revenues, and employees are attributable to the Hawaiian business.

There is no evidence, however, that this was true as of May 20, 1988. Amfac's Form 10–K indicates that in 1987 its Hawaii-based groups, the Retail and Amfac Hawaiian Groups, accounted for less than 25% of Amfac's revenues and employees.

As noted above, Amfac bears the burden of demonstrating that as of the critical date, May 20, 1988, its structure had changed so substantially as to warrant a finding that its principal place of business had moved to Hawaii. *See Goldberg v. CPC International, Inc.*, 495 F.Supp. 233, 236 (N.D.Ca.1980) (citing cases). It has failed to do so under any of the applicable tests.

Accordingly, the motion to remand these actions to the Superior Court in and for the City and County of San Francisco must be granted.

IT IS SO ORDERED.