DIAPULSE CORPORATION OF AMERI-
CA, Petitioner-Appellant,

v.

CARBA, LTD., Respondent-Appellee.

No. 695, Docket 79–7535.

United States Court of Appeals,
Second Circuit.

Argued Jan. 24, 1980.

Decided July 10, 1980.

Solomon H. Friend, New York City (Friend, Perles, Dorfman & Kleefeld, New York City, Frank D. Decolvenaere, on brief), for petitioner-appellant.

Stephen P. H. Rachlis, New York City (Hans Harnik, Stephen M. Harnik, New York City, of counsel, Wachtell, Manheim & Grouf, New York City, on brief), for respondent-appellee.

Before MULLIGAN, VAN GRAAFEILAND and KEARSE, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

This is an appeal by Diapulse Corporation of America from that part of a judgment entered in the United States District Court for the Southern District of New York which modified the injunctive provisions of an arbitration award in its favor. Appellee, Carba, Ltd. originally cross-appealed but then withdrew its appeal, content to let the award stand as modified. We hold that the district court had no authority to modify the substantive provisions of the award but remand to the district court so that application may be made for remand to the arbitration panel for clarification of ambiguities in the award.

Diapulse, a Delaware corporation, manufactures an electronic device for use by the medical and veterinary professions. The device, known as the "Diapulse machine," is designed to expedite bone and tissue healing through the emission of electromagnetic energy and impulse waves. Because of FDA objections, the machine, which is manufactured in New York, is not distributed in the United States. It is marketed in Europe and other parts of the world through a system of exclusive territorial distributorships.

In 1973, Carba, a Swiss corporation, contracted to become the exclusive distributor of Diapulse machines in Switzerland. In 1974, Diapulse granted Carba a second exclusive distributorship covering Germany. These agreements contained a clause providing for resolution of all contractual disputes by arbitration in New York City in accordance with the rules of the American Arbitration Association.

Pursuant to this clause, Diapulse filed a demand for arbitration in 1976, alleging that Carba had violated a provision in the distributorship agreements prohibiting it from competing with Diapulse in the production or sale of Diapulse machines or any similar device during the term of the agreements and for two years thereafter. The arbitration proceedings took place in June 1976. Diapulse presented evidence that Carba had funded the development of a competitive device which it marketed in Europe and elsewhere under the name "Ionar". Diapulse introduced into evidence a copy of a letter from Carba to an Arabian sales agency dated October 27, 1975, in which Carba announced the development of the Ionar machine, described it in some detail, and noted that sales efforts were concentrated in Switzerland, France, and Algeria, where hundreds of Ionar machines were currently in service and hundreds more were expected to be sold. The letter was accompanied by literature purporting to be descriptive of the Ionar machine and Ionar therapy. A representative of Carba admitted at the arbitration proceedings that the literature accompanying the letter to the Arabian sales agency was for the most part a direct translation of literature discussing the Diapulse machine which had been provided by Diapulse to Carba and other Diapulse distributors for use in the promotion of the Diapulse machine. This witness also testified that Carba had financed the development of the Ionar machine, had appointed agents or distributors of Ionar in France, Belgium, and Austria, and regularly responded to requests for information about Ionar from other parts of the world.

By way of defense, Carba argued that the Ionar machine was not really similar to the Diapulse machine and that, in any event, the non-competition clause should be con-

strued as barring competition only in Germany and Switzerland, the areas in which Carba served as exclusive distributor. Carba urged that the reference in the letter to the Arabian sales agency concerning sales efforts in Switzerland was a "sales bluff" and that in reality it never sold Ionar machines in Switzerland in violation of the non-competition clause.

In an award dated December 19, 1977, the arbitrators enjoined Carba "from engaging in competition with [appellant] in the production or sale of its device described as Diapulse or any similar devices", awarded appellant $35,000 in damages, and required Carba to pay the costs of the arbitration proceeding. Appellant petitioned for confirmation of the award in the United States District Court for the Southern District of New York in July 1978. Carba cross-moved to modify the award by deleting the provision that enjoined it from competition, arguing that the two-year period provided for in the contracts had expired. The district court concluded that because the injunction was permanent in time and unlimited in geographic scope, it violated the public policy of the United States against unreasonable restraints of trade. Purporting to act under the authority of 9 U.S.C. § 11(c), the court modified the award by adding a clause limiting the injunction geographically to the area of Switzerland and Germany and temporally to a period of two years from the date of the judgment. The award, as modified, was confirmed, and judgment thereon was entered July 6, 1979. We turn first to the district court's construction of the authority given him by section 11(c).

■■■ The purpose of arbitration is to permit a relatively quick and inexpensive resolution of contractual disputes by avoiding the expense and delay of extended court proceedings. *Wilko v. Swan*, 346 U.S. 427, 431–32, 74 S.Ct. 182, 184–85, 98 L.Ed. 168 (1953); *Office of Supply v. New York Navigation Co.*, 469 F.2d 377, 379 (2d. Cir. 1972). Accordingly, it is a well-settled proposition that judicial review of an arbitration award should be, and is, very narrowly limited. *I/S Stavborg v. National Metal Converters, Inc.*, 500 F.2d 424, 429–32 (2d Cir. 1974); *Office of Supply v. New York Navigation Co., supra*, 469 F.2d at 379–80. A federal court may vacate or modify an arbitration award only if one of the grounds specified in 9 U.S.C. §§ 10 & 11 is found to exist. *I/S Stavborg v. National Metal Converters, Inc., supra*, 500 F.2d at 429–30. *Office of Supply v. New York Navigation Co., supra*, 469 F.2d at 379. Section 11(c) authorizes a district court to modify or correct an arbitration award "[w]here the award is imperfect in matter of form not affecting the merits of the controversy."

■■■ The district court, after concluding that the arbitrators' injunction violated public policy, reasoned that this rendered the award "imperfect in form" and empowered the court to modify it so as to eliminate the violation. This was error. Section 11(c), which is limited to matters of form not affecting the merits of the controversy, does not license the district court to substitute its judgment for that of the arbitrators. It cannot be argued seriously that the district court's revision of the arbitration award, which transformed a very broad non-competition injunction into a relatively narrow one, did not affect matters of substance that were at the heart of the controversy between Carba and Diapulse. This sort of judicial intervention into the arbitral process is precisely what the narrowly defined provisions of sections 10 and 11 were designed to prevent. Section 11(c) did not empower the district court to modify the arbitration award by substantially altering its geographic and temporal scope. *See Bradigan v. Bishop Homes, Inc.*, 20 A.D.2d 966, 966–67, 249 N.Y.S.2d 1018 (N.Y. App.Div.1964), decided under a similarly worded New York statute.

■■■ The question remains whether the injunctive provisions of the award should have been vacated as against public policy. Although contravention of public policy is not one of the specific grounds for vacation set forth in section 10 of the Federal Arbitration Act, an award may be set aside if it compels the violation of law or is contrary to a well accepted and deep rooted public policy. *Local 453, IUEW v. Otis Elevator*

*Co.*, 314 F.2d 25, 29 (2d Cir.), *cert. denied,* 373 U.S. 949, 83 S.Ct. 1680, 10 L.Ed.2d 705 (1963); *Metal Product Workers Union v. Torrington Co.*, 358 F.2d 103, 106 (2d Cir. 1966); *Matter of Sprinzen*, 46 N.Y.2d 623, 629–32, 415 N.Y.S.2d 974, 389 N.E.2d 456 (1979). The parties have argued at length on the issue of whether the injunction against competition violates public policy as being of unlimited scope and duration. Basic to their differences, however, is an inability to agree upon what sales the award enjoins. Appellant contends that Carba is not prohibited from selling a device "which can perform the same function as the Diapulse device, so long as it is not a copy of the Diapulse." Carba asserts, on the other hand, that other devices which, like Diapulse, use electromagnetic and impulse waves as their method of treatment, may well be considered "similar devices" within the meaning of the arbitration award. "Similar", Carba points out, may be interpreted to mean "showing some resemblance", "related in appearance or nature", "alike though not identical", "resembling in many respects", "somewhat alike", etc. *See, e. g., Japan Import Co. v. United States*, 86 F.2d 124, 131, 24 C.C.P.A., Customs 167 (1936); *Butterfield v. Oculus Contact Lens Co.*, 332 F.Supp. 750, 757 (N.D.Ill. 1971). Appellant's answer to this is that the issue of similarity will be determined at such time as appellant may decide to pursue its remedies for violation of the injunction. We find this argument most troubling.

A district court judgment entered upon an arbitration award has the same force and effect as if it had been entered in an action in the court itself. 9 U.S.C. § 13. A court is required to frame its orders so that those who must obey them will know what the court intends to forbid. *International Longshoremen's Assn., Local 1291 v. Philadelphia Marine Trade Ass'n.*, 389 U.S. 64, 76, 88 S.Ct. 201, 208, 19 L.Ed.2d 236 (1967). "[B]asic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Schmidt v. Lessard*, 414 U.S. 473, 476, 94 S.Ct. 713, 715, 38 L.Ed.2d 661 (1974). It is for this reason that Fed.R.Civ.P. 65(d), like its predecessor 28 U.S.C. § 383, provides that every order

granting an injunction shall be specific in its terms and describe in reasonable detail the acts sought to be restrained. An order which does not satisfy the requirement of specificity and definiteness will not withstand appellate scrutiny. *See, e. g., Sanders v. Air Line Pilots Ass'n, Int'l.*, 473 F.2d 244, 247–48 (2d Cir. 1972); *B.H. Bunn Co. v. AAA Replacement Parts Co.*, 451 F.2d 1254, 1268–70 (5th Cir. 1971); *E.W. Bliss Co. v. Struthers-Dunn, Inc.*, 408 F.2d 1108, 1113–17 (8th Cir. 1969); *Brumby Metals, Inc. v. Bargen*, 275 F.2d 46, 49–50 (7th Cir. 1960). Section 10(d) of the Arbitration Act provides that the district court may vacate an award that is not "definite". The injunction in this case falls within that category.

Both parties and the district court have assumed without question that the injunction was intended to be everlasting, despite the fact that the word "permanently" or its equivalent appears nowhere in the award. Both parties and the court also assumed that it was intended to be worldwide in scope. We are not convinced that this was the arbitrators' intent although we make no finding to that effect. A knowledgeable determination as to whether the injunctive provisions of the award contravene public policy cannot be made, however, unless the district court is able to place the term "similar devices", adequately defined, in its proper temporal and geographic setting. The parties may have been willing to live with a lack of explicitness during the two-year term of the agreement not to compete. The district court, which must be concerned with public policy and the problems arising out of the enforcement of an ambiguous decree that may be much broader in scope, is not bound to accept the parties' choice of contractual language.

The judgment as appealed from is remanded to the district court so that appellant Diapulse may there move that the injunctive provisions of the award be referred back to the arbitrators for (1) a more complete and descriptive definition of the type of device whose sale by Carba is being enjoined, (2) a clarifying statement as to the geographical scope of the injunction and (3) a clarifying statement as to the duration of the injunction. If Diapulse does not so

move within a reasonable time as set by the district court, the judgment may stand as entered, Carba having taken no appeal therefrom. We make no present determination as to whether the award, when and if clarified by the arbitrators, will contravene public policy.

So ordered.