**TRAILER MARINE TRANSPORT, INC., Plaintiff,**

v.

**UNION DE TRONQUISTAS DE PUER-TO RICO, LOCAL 901, Defendant.**

Civ. No. 81–0934CC.

United States District Court,
D. Puerto Rico.

Dec. 27, 1982.

Rafael Cuevas Kuinlam, Hato Rey, P.R., for plaintiff.

Ana Rosa Biascoechea, Hato Rey, P.R., for defendant.

### OPINION AND ORDER

CEREZO, District Judge.

This is an action to vacate an arbitration award brought by an employer pursuant to Section 301(a) of the Labor Management Relations Act (LMRA), 29 U.S.C. Sec. 185(a). Both parties have filed motions for summary judgment based on the following facts which they have admitted to be uncontroverted.

Plaintiff is a corporation doing business in the Commonwealth of Puerto Rico and engaged in the transportation of cargo be-

tween Puerto Rico and the United States as well as other countries and, therefore, within the coverage of Section 2 of the L.M.R.A., 29 U.S.C. Sec. 152. Defendant is a labor organization representing employees in accordance with Section 2(5) of the L.M.R.A. On March 27, 1977 defendant entered into a collective bargaining agreement with plaintiff which lasted until March 25, 1980. On March 26, 1980 defendant entered into another collective bargaining agreement which will expire on March 25, 1983. After the second collective bargaining agreement was approved, plaintiff discontinued the practice of scheduling inventory work on Saturdays and Sundays and of using regular employees who were guaranteed a minimum of eight hours pay at overtime rate, regardless of whether the hours were worked or not. Plaintiff discontinued the practice because it alleged that the second agreement specifically regulated all matters related to overtime working conditions and that these stipulations required that overtime hours be actually worked. Defendant's position is that this practice was not regulated by the second collective bargaining agreement and was therefore a previous working condition unaltered by the collective bargaining agreement according to Article V, Sec. 1 of the agreement.[1] Pursuant to the second collective bargaining agreement's arbitration clause, a submission agreement[2] was referred to arbitrator Juan T. Rodriguez, who on April 1, 1981 issued an arbitration award indicating that the practice of holding inventories on Saturdays and Sundays and paying regular workers a minimum of eight hours at overtime work, regardless of the actual hours worked, was an employment condition which was not covered by the second collective bargaining agreement and therefore unaltered by it.[3]

Plaintiff's essential contention which motivated the present complaint is that the arbitrator was limited in its interpretation of the collective bargaining agreement since Article XIII, Section 8,[4] clearly required that the award be according to law and that it could not amend the collective bargaining agreement unless the agreement were contrary to law. Plaintiff argues that the arbitrator's interpretation of the second collective bargaining agreement was contrary to law because it ignored the clear and unambiguous terms in relation to overtime work and that it "amended" the second collective bargaining agreement by establishing a special overtime compensation for inventory work performed on weekends. It also contends that the award requires that

1. ARTICLE V—UPHOLDING OF WORKING CONDITIONS
SECTION 1—SAFEGUARDING OF CONDITIONS
Those issues not covered by this collective bargaining agreement which affect time and wages or working conditions will not be changed unless there is an agreement between the parties; providing that the aforementioned will not apply in the event of errors in good faith or due to an oversight, in which case the parties may correct the error within ninety (90) days.

2. *Submission Agreement*
"To determine if under the current Collective Bargaining Agreement such practice (defined below) has been varied by the Collective Bargaining Agreement or if it can be unilaterally varied by the Company."
Definition of the practice:
"The work to perform or realize company inventories was assigned to regular type of employees. The inventories were performed on Saturdays and Sundays, besides they were paid a minimum of eight hours at double time

rate. The Company refused to continue with said practice."

3. The arbitrator indicated: In this Arbitrator's opinion, the working conditions related to the inventory work performed by regular employees, who received a minimum of eight (8) hours pay at double rate, is a matter or specific working condition which is not covered by the Collective Bargaining Agreement. In other words, that working condition is not expressly regulated by the Agreement, and therefore, as stipulated by Article V, Section 1 of the current Collective Bargaining Agreement, it is a working condition which cannot be changed unilaterally by the Company, and, in order to make any change, it must be agreed by both parties.

4. "ARTICLE XIII—COMPLAINT AND GRIEVANCES PROCEDURE
*Section 8 Arbiter's Award*
The arbiter's award will be one pursuant to law and once it is rendered it will be final, providing that no award may amend the agreement unless it is contrary to the applicable law."

the employer violate the second collective bargaining agreement's clause as to the prohibition of individual agreements with workers covered by the collective bargaining agreement.[5] Defendant replied by referring to the traditional federal policy of restraint in reviewing arbitration awards and contending that plaintiff's request is tantamount to a *de novo* review of the award. As an alternative argument, it argues that even if the phrase "according to law" was meant to amplify the scope of judicial review to include an examination of the correctness of the legal principles utilized by the arbitrator, the award was according to law.

■ The desirability of limited court review of an arbitration award that is final and binding has been consistently sustained since the United Steelworkers of America trilogy[6] of cases. *Bettencourt v. Boston Edison Co.,* 560 F.2d 1045, 1048 (1st Cir. 1977). Thus, the general criteria of review is canvassed broadly and the award will be upheld if it can be said that it draws its essence from the collective bargaining agreement. See: *Victor Elec. W. & C. v. Intern. Br. of Elec. Wkrs.,* 411 F.Supp. 338, 342 (D.R.I.1976) aff'd. 546 F.2d 413 (1976). This lax criteria of judicial review of arbitration is not boundless. Heightened scrutiny is required by the exceptional situations traditionally recognized in common law and enumerated in 9 U.S.C. Sec. 10;[7] i.e.: when the decision is the result of fraud or bias, misconduct of the arbitrator, and when the arbitrator has exceeded his/her powers. See: *Mobil Oil Corp. v. Local 8–766, Oil, Chemical & Atomic,* 600 F.2d 322, 326 (1st Cir.1979); and *Diapulse Corp. of*

*America v. Carba Ltd.,* 626 F.2d 1108, 1110–11 (2d Cir.1980); *Saltlake Pressmen and Platemakers, Local Union No. 28 v. Newspaper Agency Corp.,* 485 F.Supp. 511 (D.C. Utah 1980). The main wellspring of the arbitrator's authority lies in the arbitration stipulations of the collective bargaining agreement and in the submission agreement which generated the award. *Piggly Wiggly, etc. v. Piggly Wiggly, etc.,* 611 F.2d 580, 583 (5th Cir.1980).

■ In the present case, the arbitration clause indicates that the award shall be according to law and will be final and binding. From the inclusion of this phrase in the arbitration clause, plaintiff concludes that the scope of the court's review is more extensive than the generally recognized standard and therefore the arbitrator's award should be set aside since it is contrary to law. The only authorities that plaintiff brings in support of its novel theory that seeks departure from the doctrine propounded in the Supreme Court's "trilogy" is the decision by the Supreme Court of Puerto Rico in *Labor Relations Board v. N.Y. & P.R. S.S. Co.,* 69 PRR 730 (1949), later cited in *United Steelworkers v. Paula Shoe Co., Inc.,* 93 PRR 645, 650 (1966) and in *Labor Relations Board v. Cooperativa Cafeteros,* 89 PRR 487 (1963). According to these decisions the inclusion of the phrase "according to law" in an arbitration clause conditions the arbitrator's decision to a correct application of legal principles and, therefore, enables a court to review the legal criteria used by an arbitrator; contrary to the general principle that an arbitrator's erroneous use of legal principles to

---

**5.** ARTICLE V
*Section 3 Agreements with Employees*
The company will not carry out individual agreements nor collective agreements with employees covered by this agreement and in the event it does such agreements will be void. This agreement can only be amended by the Secretary-Treasurer or the person he designates and the amendments will be done in writing and signed by the parties.

**6.** *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America*

v. *Warrior & Gulf N. Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise W. & C. Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

**7.** An additional cause for stricter degree of judicial review and for setting aside the arbitrator's award not included in the statute is when the decision is based on an intentional disregard of the law. *Sobel v. Hertz Wagner & Co.,* 469 F.2d 1211 (2d Cir.1972), *but see: MSP Collaborative v. Fidelity & Deposit Co. of Md.,* 596 F.2d 247, 251 (7th Cir.1979).

arrive at his decision (for example, the rules of contract interpretation) does not necessarily require that the court set aside the award. See: *Westinghouse Elevators v. S.I.U. de Puerto Rico*, 583 F.2d 1184, 1187 (1st Cir.1978) and *Revere Copper and Brass, Inc. v. Overseas Private Ins. Co.*, 628 F.2d 81 (D.C.Cir.1980). However, the circumstances of the instant case do not require that we embark on a complex analysis of whether the inclusion of such a phrase may create a set of subtle differences in the scope of review of an arbitration award for the alleged illegality of the arbitrator consists in having interpreted the second collective bargaining agreement in a manner contrary to law. Although plaintiff has not pinpointed what law the arbitrator has violated, we can only conclude from its pleadings that it is referring to the general principles of contract interpretation. An examination of the record reveals that the arbitrator's interpretation of the second collective bargaining agreement, even under an extended scope of review, was in conformity with the legal criteria used to interpret contracts.

In Puerto Rico, Article 1233 of the *Civil Code, P.R. Laws Ann.*, Tit. 31 Sec. 3471 [8] indicates that the intention of contracting parties is the prevailing guideline in contract interpretation. See also: *Merle v. West Bend Co.*, 97 PRR 392 (1969); F. El Koury & E. El Koury, *How Arbitration Works* (3rd Ed. 1973) p. 302. It is only when the terms are clear that there is no need to examine outside information, El Koury, *supra,* at pp. 303–304. In the present situation, the practice of special overtime inventory compensation, undisputed by the parties, was in direct conflict with the provisions on overtime work in the second collective bargaining agreement, thus creating an ambiguous situation subject to different interpretations. To deal with this conflict, the parties deemed it necessary to subject the matter to arbitration; a fact that by itself would indicate that the language of the collective bargaining agreement was not as clear as plaintiff alleges it to be. Thus, in order to determine the proper interpretation, the arbitrator correctly applied Article 1234 of the *Civil Code, P.R. Laws Ann.*, Tit. 31 Sec. 3472,[9] and analyzed the contracting parties' intention by examining their previous and coetaneous acts. See: *Merle v. West Bend Co.*, 97 PRR 392 (1969); *Hoffman v. Cuadrado*, 14 PRR 573 (1908). These acts revealed that, even though the first collective bargaining agreement also contained specific stipulations regulating overtime work, the employer accepted the special overtime compensation for inventory work performed on Saturdays and Sundays. There was no indication that the acceptance of this practice was changed by the second collective bargaining agreement or that the possibility of changing this practice was ever discussed during negotiations.[10] Specific language in the second collective bargaining agreement dealing with the working conditions of the special inventory overtime compensation would have clarified the matter.

Nevertheless, even assuming that there was no ambiguity in the agreement, the second collective bargaining agreement, by its own terms, required that the arbitrator examine prior working conditions to see if they were altered by it. This determination, which obviously required an examination of matters outside the four corners of

**8.** "If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed.

  If the words should appear contrary to the evident intention of the contracting parties, the intention shall prevail."

**9.** "In order to judge as to the intention of the contracting parties, attention must principally be paid to their acts, contemporaneous and subsequent to the contract."

**10.** Plaintiff did not present support for the possibility that the practice of special overtime compensation for weekend inventory work was discussed or that the parties agreed during negotiations to modify it. Controversy on whether the arbitrator ignored such type of conversations sustained during the negotiations might have precluded summary judgment.

the agreement, was also the essence of the submission agreement. It would be incongruous for plaintiff to agree to maintain previous working conditions not included in the second collective bargaining agreement, agree to arbitration of disputes concerning the application and interpretation of the agreement, agree to submit to an arbitrator conflicting clauses as to working conditions not included in the agreement and then limit the scope of the arbitrator's interpretation to an examination of only those parts of the collective bargaining agreement that it contends "clearly" support their position and not to other clauses which require an examination of conditions not covered by it. This position is not only in conflict with plaintiff's acts and the second collective bargaining agreement's terms and conditions but is also contrary to the principles of contract interpretation which they claim the arbitrator violated. See: *P.R. Laws Ann.*, Tit. 31 Sec. 3475 [11] and *Martin v. Vector Company, Inc.*, 498 F.2d 16 (1st Cir. 1974).

We believe the arbitrator correctly examined the specific shop practice of these parties on this matter to determine which employment conditions were not altered by the second collective bargaining agreement, thus correctly applying not only federal labor doctrine on this issue, see: *United Steelworkers of America v. Warrior & Gulf N. Co.*, 363 U.S. 574, 581–82, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960), but also acted in conformity with general principles regarding the law of contract interpretation. *P.R. Laws Ann.*, Tit. 31 Sec. 3477,[12] and the second collective bargaining agreement's own terms. The practice of special overtime compensation for inventory work performed by regular employees on Saturday and Sunday remained unaltered by the second collective bargaining agreement and, according to Article V, Sec. 1 (Safeguarding of Conditions) of this agreement, this practice constitutes an employment condition

not covered by the second collective bargaining agreement that must be continued unless the parties agree otherwise. There is nothing in the record to infer that the conclusion was based on the arbitrator's erroneous or contrary to law interpretation of the second collective bargaining agreement. Plaintiff has not advanced any other reason which would justify vacating the award. There being no real controversy as to any material facts that could establish that the arbitration award was erroneous or "contrary to law," defendant's motion for summary judgment is hereby GRANTED and the complaint is ORDERED dismissed. The plaintiff's motion for summary judgment is DENIED.

SO ORDERED.

---

**11.** "The stipulations of a contract should be interpreted in relation to one another, giving to those that are doubtful the meaning which may appear from the consideration of all of them together."

**12.** "The uses or customs of the country shall be taken into consideration in interpreting ambiguity in contracts supplying in the same the omissions of stipulations which are usually included."