**METALLGESELLSCHAFT A.G.,**
Plaintiff-Appellant,

v.

**M/V CAPITAN CONSTANTE and Yacimientos Petroliferos Fiscales,**
Defendants-Appellees.

No. 204, Docket 85–7443.

United States Court of Appeals,
Second Circuit.

Argued Oct. 7, 1985.

Final Briefs Received Nov. 25, 1985.

Decided May 19, 1986.

Tulio R. Prieto, New York City (Cardillo & Corbett, N.Y. City, of counsel), for plaintiff-appellant.

Juan A. Anduiza, New York City (Haight, Gardner, Poor & Havens, Mark C. Flavin and Charles B. Anderson, N.Y. City, of counsel), for defendants-appellees.

American Arbitration Ass'n and Society of Maritime Arbitrators, Inc., amici curiae.

Before FEINBERG, Chief Judge, and VAN GRAAFEILAND and MESKILL, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Metallgesellschaft A.G. appeals from an order and judgment of the United States District Court for the Eastern District of New York (Bramwell, J.). The order confirmed an arbitration award in favor of appellee Yacimientos Petroliferos Fiscales in the amount of $794,684.33, plus interest, for maritime freight charges admittedly due and owing; the judgment was for the amount of the award. Appellant's principal contention on appeal is that the district court should not have confirmed the award because it did not resolve all the issues submitted to the arbitrators. For reasons that follow, we affirm.

On May 19, 1983, Metallgesellschaft and Yacimientos, the registered owner of the tanker CAPITAN CONSTANTE, entered into a charter party on the ASBA-TANKVOY form for the carriage by the vessel of 53,000 metric tons of fuel oil, plus or minus ten percent, from Argentine ports to New York. The Freight Clause in the charter party reads:

> FREIGHT. Freight shall be at the rate stipulated in Part I and shall be computed on intake quantity (except deadfreight

as per Clause 3) as shown on the Inspector's Certificate of Inspection. Payment of freight shall be made by Charterer without discount upon delivery of cargo at destination, less any disbursements or advances made to the Master or Owner's agents at ports of loading and/or discharge and cost of insurance thereon. No deduction of freight shall be made for water and/or sediment contained in the cargo. The services of the Petroleum Inspector shall be arranged and paid for by the Charterer who shall furnish the Owner with a copy of the Inspector's Certificate.

Although it is undisputed that the CAPITAN CONSTANTE loaded 50,687.87 tons of fuel oil in Argentina and, upon completion of the voyage and delivery on July 15, 1983, invoiced Metallgesellschaft for freight based on this intake quantity, the invoice never has been paid. Instead, on the day before unloading was completed, Metallgesellschaft instituted an action in the Eastern District seeking damages for alleged short delivery and fuel contamination.

On December 22, 1983 Yacimientos served its answer, which contained a counterclaim for freight earned, demurrage, and dead freight, and reserved Yacimientos' right to arbitration in accordance with the provisions of the charter party. In July 1984 Yacimientos demanded arbitration. A panel was instituted in September, and a hearing was held on January 28, 1985. The panel, with one member dissenting, found that "there was no dispute as to the amount of freight which Yacimientos had earned and that, by clear and unambiguous language, the parties expressly dealt with the payment of freight in a special manner." Finding no reason to depart from the parties' undertaking, the arbitrators made a partial final award in Yacimientos' favor for the freight admittedly due and owing. The district court affirmed, holding that the demand for freight was a separate, independent claim, not subject to any offset, and, being wholly independent of other issues, could be finally disposed of separately. A brief survey of

established maritime law convinces us that the district court was correct.

It is a rule of ancient vintage that, where freight is payable on delivery, it should be paid concurrently with the delivery of the goods. Carver, *Carriage of Goods by Sea*, 10th ed. 767. Moreover, once the goods have been carried to their destination and are ready to be delivered, the freight must be paid even though the goods are damaged or deteriorated. *Id.* at 769. "This undertaking in the charter is an independent obligation and is not discharged because of failure to deliver the cargo in good condition...." *Compagnia Di Navigazione Mauritius Rome v. Kulukundis*, 182 F.Supp. 258, 263 (E.D.N.Y.1959), *aff'd on opinion below*, 277 F.2d 161 (2d Cir.1960). *See* 10 Williston on Contracts, 3d ed. § 1079 at 88.

Obviously, this rule is of substantial benefit to shipowners. As Professors Gilmore and Black point out in their authoritative work on admiralty, so-called "tramp" ships carry most of the bulk raw materials that move under charter, Gilmore & Black, *The Law of Admiralty* 197 (2d ed.), and many of these ships operate in a tight cash position and cannot afford to wait for payment of their freight charges. *Id.* at 210. For a more extensive discussion, see *Greenstone Shipping Co. v. Transworld Oil, Ltd.*, 588 F.Supp. 574, 584 (D.Del.1984).

Unfortunately, with the development of the statutory right of set-off or counterclaim which was unknown to the common law, 80 C.J.S. *Set-off and Counterclaim* § 4 at 9, the benefit of immediate payment came in danger of being lost. Under modern procedural rules, a charterer who is sued for freight may counterclaim in the same action for damages based on the shipowner's asserted wrongdoing. *See Schwinger v. Raymond*, 83 N.Y. 192, 197–98 (1880); *Steamship Rutherglen Co. v. Howard Houlder & Partners, Inc.*, 203 F. 848, 850 (2d Cir.1913); Williston, *supra*, § 1079 at 89.

As a result, the practice developed of incorporating a clause in charter parties

which provides in words or substance that freight must be paid in cash "without discount" on delivery of the cargo. Such a provision may be found in clause 4 of the basic Uniform General Charter 1922 (code name Gencon), which Gilmore and Black include in the appendix of their book, pages 997 *et seq.* Referring to this clause, the authors say that it "gives the clarity of express and detailed stipulation to the rule that freight is due and payable on delivery." Gilmore & Black, *supra,* at 210.

■ The freight clause in the instant case, which provides that freight shall be computed on intake quantity and shall be payable without discount on delivery, may be found in many of the standard tanker voyage charter parties. *See, e.g.,* Mobilvoy, Exxonvoy 1969, Essovoy 1969, and the C.F. Tank Vessels Charter Party, as summarized in *Admiralty Law Institute: Symposium on Charter Parties,* 49 Tul.L. Rev. 743, 758 (1975). The term "discount" used in this manner means set-off, recoupment, abatement, defalcation, or counterclaim. *See Black's Law Dictionary,* 552 (4th ed.); *Michigan Yacht & Power Co. v. Busch,* 143 F. 929, 936 (6th Cir.1906); *Ives v. Van Epps,* 22 Wend. (New York) 155, 156 (1839); *Ward v. Fellers,* 3 Mich. 281, 290 (1854); *Hatchett and Brother v. Gibson,* 13 Ala. 587, 594 (1848). Accordingly, the clearly expressed intent of the parties herein was that Metallgesellschaft would pay its freight bill promptly upon delivery and would not be able to evade the prompt performance of this contractual obligation by asserting a claim in abatement or set-off.

If this action had remained in the district court rather than proceeding to arbitration, Yacimientos undoubtedly would have been entitled to summary judgment in its favor for the amount of the unpaid freight. *See, e.g., Cargo & Tankship Management Corp. v. India Supply Mission,* 336 F.2d 416, 418–20 (2d Cir.1964), where we affirmed summary judgment for freight charges in the amount of $286,273.07 despite the charterer's claims of unseaworthiness and voluntary deviation. We held

that, although the charterer's claims presented triable issues, they were "legally irrelevant" to the question of the owner's claim for freight. *Id.* at 419. In *Greenstone Shipping Co. v. Transworld Oil, Ltd., supra,* 588 F.Supp. 574, summary judgment in the amount of $1,294,031.10 was entered in favor of the shipowner despite the charterer's claims of cargo shortage, contamination, and damage. The court relied on the well-established rule that a charterer's liability for freight is an independent obligation payable regardless of any claims a charterer may have for cargo damage or shortage. In *Puerto Rico Marine Management, Inc. v. Ken Penn Amusement, Inc.,* 574 F.Supp. 563 (W.D.Pa.1983), summary judgment for unpaid freight in the amount of $1,387.88 was entered in favor of the carrier despite the shipper's counterclaim for damage to the shipment.

We have held that "[t]he purpose of arbitration is to permit a relatively quick and inexpensive resolution of contractual disputes", *Diapulse Corp. v. Carba, Ltd.,* 626 F.2d 1108, 1110 (2d Cir.1980). It would be a perversion of this salutary design for a shipowner to be denied the same prompt and commercially important relief from an arbitration panel that it could have received from a court. We think it better to hold, as did the arbitrators and the district court, that Metallgesellschaft's liability for freight was independent and separate from the remaining issues before the arbitrators and could be finally determined without reference to those legally irrelevant issues. In so holding, we comply with the congressional intent that we enforce the agreement into which the parties have entered. *Dean Witter Reynolds Inc. v. Byrd,* —— U.S. ——, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985).

Our decision in *Michaels v. Mariforum Shipping, S.A.,* 624 F.2d 411 (2d Cir.1980), is not to the contrary. That case involved a two-year time charter that was terminated after one year because of commercial frustration associated with a series of mishaps to the chartered ship. After the own-

er refused the charterer's demands for restitution of hire payments already made, the charterer filed six claims in arbitration seeking damages of approximately $175,-000, and the owner responded with six counterclaims for over $1,695,000. An interim award was made which held the charterer liable on four of the owner's counterclaims, denied liability on one counterclaim, and deferred decision on the other. The award did not decide any of the charterer's claims and, because the parties had agreed that there would be separate findings on liability and damages, no decision was made as to the amount of the owner's award. Clearly, the arbitrators' award in that case was not intended to be, and was not, a final award. It "did not finally dispose of any of the claims submitted, since it left open the question of damages on the four counterclaims of Owner that it sustained and reserved decision on the fifth." *Id.* at 414. *See Sperry International Trade, Inc. v. Government of Israel,* 532 F.Supp. 901, 909 (S.D.N.Y.), *aff'd,* 689 F.2d 301 (2d Cir.1982).

Other cases relied upon by appellant are similarly distinguishable. More closely in point are the cases which endorse the proposition that an award which finally and definitely disposes of a separate independent claim may be confirmed although it does not dispose of all the claims that were submitted to arbitration. *See, e.g., Island Creek Coal Sales Co. v. City of Gainesville,* 729 F.2d 1046, 1049 (6th Cir.1984); *Moyer v. Van-Dye-Way Corp.,* 126 F.2d 339, 341 (3d Cir.1942); *Sperry International Trade, Inc. v. Government of Israel, supra,* 532 F.Supp. at 909; *Eurolines Shipping Co., S.A. v. Metal Transport Corp.,* 491 F.Supp. 590, 592 (S.D.N.Y.1980); *Puerto Rico Maritime Shipping Authority v. Star Lines Ltd.,* 454 F.Supp. 368, 372 (S.D.N.Y.1978). Because the award in the instant case finally and conclusively disposed of a separate and independent claim and was subject to neither abatement nor set-off, the district court did not err in confirming it.

■ We find no merit in appellant's second contention that the arbitrators were guilty of misconduct in refusing to postpone the hearing on the freight claim for forty-five days in order to permit appellant to conduct discovery on its claim of unseaworthiness. As already pointed out, the issue of unseaworthiness was legally irrelevant to appellee's freight claim. Moreover, appellant had had ample time prior to the scheduled hearing to conduct discovery. *See Atlanta Shipping Corp. v. International Modular Housing, Inc.,* 547 F.Supp. 1356, 1364 (S.D.N.Y.1982); *Dan River, Inc. v. Cal-Togs, Inc.,* 451 F.Supp. 497, 504 (S.D.N.Y.1978).

The judgment and order of the district court are affirmed with costs to appellee Yacimientos Petroliferos Fiscales. Appellant's request for double costs and attorneys' fees is denied.

FEINBERG, Chief Judge, dissenting:

I respectfully dissent from the decision to affirm Judge Bramwell's confirmation of the partial final award of an arbitration panel. I do so because I believe that the award was not final, and, accordingly, the district court should not have confirmed it. In addition, it is my view that confirmation of this type of award will generally encourage piecemeal review of arbitration awards and is therefore inconsistent with the purpose of arbitration.

It is axiomatic that litigants must ordinarily wait for final resolution of all issues submitted to a federal court before they can enforce a judgment or obtain appellate review. The final judgment rule is embodied in Title 28 of the United States Code, section 1291, and the policies behind the rule are compelling, see *American Express Warehousing, Ltd. v. Transamerica Insurance Co.,* 380 F.2d 277, 280 (2d Cir. 1967). It is true that a few exceptions to the rule have been judicially or legislatively created, but the former, principally the collateral order doctrine, see, e.g., *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), are not relevant here. As to the

latter, examples of congressionally-authorized exceptions to the final judgment rule are interlocutory orders involving injunctions, 28 U.S.C. § 1292(a)(1), unresolved questions of law certified for appeal by the district court, see § 1292(b), or, most directly relevant here, cases involving multiple claims, where the district court makes "an express determination that there is no just reason for delay" and orders the entry of a final judgment as to fewer than all the claims, pursuant to Fed.R.Civ.P. 54(b).

A similar rule of finality applies to arbitration proceedings under the Federal Arbitration Act, 9 U.S.C. §§ 9 and 10(d). Lack of finality is a statutory ground for vacating an arbitration award and for refusing confirmation; section 10(d) provides for vacation of an award that is not "mutual, *final*, and definite...." (emphasis supplied). See also *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 413–14 (2d Cir.1980) (interim award did not purport to finally resolve issues and was not subject to confirmation). Final and complete resolution of the issues submitted to arbitration has usually been considered a prerequisite to confirmation by the district court. The exception the majority now engrafts onto this requirement of finality is not authorized by Congress and gives the district court authority to confirm an award that it would not otherwise have. This exception for separate and independent claims creates, in effect, an arbitration analogue to Rule 54(b).[1]

I do not believe the courts should ordinarily create exceptions to the final judgment aspect of the arbitration statute. Such an exception may be necessary where a district court's failure to enforce an award "would render meaningless the arbitrators' power to grant ... equitable relief." *Southern Seas Navigation v. Petroleos Mexicanos of Mexico City*, 606 F.Supp. 692, 694 (S.D.N.Y.1985); see also

*Sperry International Trade, Inc. v. Government of Israel*, 532 F.Supp. 901 (S.D.N.Y.), aff'd, 689 F.2d 301 (2d Cir.1982). But this is not contrary to the rule of finality, since the court's action is needed to ensure that a final award eventually can be rendered. Furthermore, this exception relies on an analogy to the traditional equitable powers of the courts, cf. *Island Creek Coal Sales Co. v. City of Gainesville*, 729 F.2d 1046, 1048–49 (6th Cir.1984), not invoked here. The exception to the final judgment rule now embodied in Rule 54(b) required the approval of Congress. That body should do the amending of the arbitration statute to provide a separate and independent claim exception to the finality requirement of section 10(d), if it finds such an amendment consistent with the goals of the arbitration statute. That the parties contracted for the payment of freight "without discount" may make delay in payment seem unfair, but it should not enlarge the district court's power to confirm the award, any more than the parties could contract to appeal or enforce interlocutory district court judgments.

As the majority recognizes, arbitration is designed "to permit a relatively quick and inexpensive resolution of contractual disputes...." *Diapulse Corp. v. Carba, Ltd.*, 626 F.2d 1108, 1110 (2d Cir.1980). The majority points out that appellees could have obtained summary judgment on their claim for freight, had they chosen to submit it to a court rather than to an arbitration panel, and suggests that appellant might then have been able to appeal to this court immediately. The majority therefore believes that its decision is necessary to encourage use of arbitration rather than litigation in similar situations in the future. Even if the courts were the appropriate source of such an exception to the requirement of finality embodied in section 10(d), I do not agree that confirmation of

---

1. The policy behind Rule 54(b) was referred to in a prior opinion of this court, *Liberian Vertex Transports v. Assoc. Bulk Carriers*, 738 F.2d 85, 87–88 (2d Cir.1984), a case quite similar on its facts to this one, in which we indicated that the district court was correct in refusing to confirm

a partial final arbitration award. While the policy of Rule 54(b) was cited as justification there for holding the district court's order unappealable, the opinion did not suggest that Rule 54(b) applies to arbitration awards.

partial final awards ultimately furthers the goals of arbitration. Indeed, the function of arbitration should make considerations of finality even more compelling in arbitration than they are in conventional litigation.

It is true that allowing the district court to confirm a partial final award of freight would provide appellees here with a speedier resolution of one of their counterclaims than if they had to await a decision on the remaining claims. Nevertheless, in the long run, I fear that confirmation of such separate and independent claims will make arbitration more complicated, time consuming and expensive. After this decision, use of partial final awards will doubtless increase [2] and, if the successful parties can get partial awards confirmed by the district courts, it stands to reason that they will do so. See, e.g., *Liberian Vertex Transports v. Assoc. Bulk Carriers*, 738 F.2d 85, 86 (2d Cir.1984) (shipowner unsuccessfully sought confirmation of partial final award). Just as piecemeal review disrupts and delays ongoing litigation in the courts, confirmation of partial awards will inevitably interrupt and extend arbitration proceedings. See id. at 87; *Compania Panemena Maritima v. J.E. Hurley Lumber Co.*, 244 F.2d 286, 289–90 (2d Cir.1957). It will make arbitration more like litigation, a result not to be desired. It would be better to minimize the number of occasions the parties to arbitration can come to court; on the whole, this benefits the parties, the arbitration process and the courts.

Nor would refusal to allow confirmation of these awards necessarily allow the charterer to delay the arbitration proceeding unduly in order to postpone payment of freight. Arbitrators can conduct the arbitration in such a way as to discourage delay. For example, in this case, they could charge interest on their award of freight, calculated from the date it became due or order the freight deposited in escrow pending resolution of the remaining claims. If the arbitrators believe that the

charterer has delayed the proceedings to avoid paying freight, under the applicable agreement they can impose costs and attorneys fees. Moreover, they can schedule hearings at shorter intervals, in order to expedite the process. Similar techniques, short of confirmation of these partial final awards, would, I believe, prove sufficient to minimize the incentives for delay in other arbitration proceedings.

For all of the above reasons, I respectfully dissent.

---

**2.** Amicus Society of Maritime Arbitrators indicates that such partial final awards already account for "a significant percentage" of maritime awards, in excess of 16% of all awards rendered last year, despite uncertainty as to whether or not they are subject to confirmation.