*688 Justice Ginsburg,
with whom Justice Stevens and Justice Breyer join, dissenting.
When an arbitration clause is silent on the question, may arbitration proceed on behalf of a class? The Court prematurely takes up that important question and, indulging in de novo review, overturns the ruling of experienced arbitrators.[1]
The Court errs in addressing an issue not ripe for judicial review. Compounding that error, the Court substitutes its judgment for that of the decisionmakers chosen by the parties. I would dismiss the petition as improvidently granted.[2] Were I to reach the merits, I would adhere to the strict limitations the Federal Arbitration Act (FAA), 9 U. S. C. § 1 et seq., places on judicial review of arbitral awards. § 10. Accordingly, I would affirm the judgment of the Second Circuit, which rejected petitioners’ plea for vacation of the arbitrators’ decision.
I
As the Court recounts, ante, at 667-670, this case was launched as a class action in federal court charging named ocean carriers (collectively, Stolt-Nielsen) with a conspiracy to extract supracompetitive prices from their customers (buyers of ocean-transportation services). That court action terminated when the Second Circuit held, first, that the parties’ transactions were governed by contracts (charter parties) with enforceable arbitration clauses, and second, that the antitrust claims were arbitrable. JLM Industries, Inc. v. Stolt-Nielsen S. A., 387 F. 3d 163, 175, 181 (2004).
Cargo-shipper AnimalFeeds International Corp. (Animal-Feeds) thereupon filed a demand for class arbitration of the *689 antitrust-conspiracy claims.[3] Stolt-Nielsen contested AnimalFeeds’ right to proceed on behalf of a class, but agreed to submission of that threshold dispute to a panel of arbitrators. Thus, the parties entered into a supplemental agreement to choose arbitrators and instruct them to “follow . . . Rul[e] 3 ... of the American Arbitration Association's Supplementary Rules for Class Arbitrations.” App. to Pet. for Cert. 59a. Rule 3, in turn, directed the panel to “determine ... whether the applicable arbitration clause permits the arbitration to proceed on behalf of... a class.” App. 56a.
After receiving written submissions and hearing arguments, the arbitration panel rendered a clause-construction award. It decided unanimously — and only — that the “arbitration claus[e] [used in the parties’ standard-form shipping contracts] permitfs] this . . . arbitration to proceed as a class arbitration.” App. to Pet. for Cert. 52a. Stolt-Nielsen petitioned for court review urging vacatur of the clause-construction award on the ground that “the arbitrators [had] exceeded their powers.” § 10(a)(4). The Court of Appeals upheld the award: “Because the parties specifically agreed that the arbitration panel would decide whether the arbitration claus[e] permitted class arbitration,” the Second Circuit reasoned, “the arbitration panel did not exceed its authority in deciding that issue — irrespective of whether it decided the issue correctly.” 548 F. 3d 85,101 (2008).
II
I consider, first, the fitness of the arbitrators’ clause-construction award for judicial review. The arbitrators decided the issue, in accord with the parties’ supplemental *690 agreement, “as a threshold matter.” App. 56a. Their decision that the charter-party arbitration clause permitted class arbitration was abstract and highly interlocutory. The panel did not decide whether the particular claims Animal-Feeds advanced were suitable for class resolution, see App. to Pet. for Cert. 48a-49a; much less did it delineate any class or consider whether, “if a class is certified, . . . members of the putative class should be required to ‘opt in’ to th[e] proceeding,” id., at 52a.
The Court, ante, at 670-671, n. 2, does not persuasively justify judicial intervention so early in the game or convincingly reconcile its adjudication with the firm final-judgment rule prevailing in the federal court system. See, e. g., 28 U. S. C. § 1257 (providing for petitions for certiorari from “[f]inal judgments or decrees” of state courts); § 1291 (providing for Court of Appeals review of district court “final decisions”); Catlin v. United States, 324 U. S. 229, 233 (1945) (describing “final decision” generally as “one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment” (internal quotation marks omitted)).
We have equated to “final decisions” a slim set of collateral orders that share these characteristics: They “are conclusive, [they] resolve important questions separate from the merits, and [they] are effectively unreviewable on appeal from the final judgment in the underlying action.” Mohawk Industries, Inc. v. Carpenter, 558 U. S. 100, 106 (2009) (quoting Swint v. Chambers County Comm’n, 514 U. S. 35, 42 (1995)). “[O]rders relating to class certification” in federal court, it is settled, do not fit that bill. Coopers & Lybrand v. Livesay, 437 U. S. 463, 470 (1978).[4]
*691 Congress, of course, can provide exceptions to the “final-decision” rule. Prescriptions in point include § 1292 (immediately appealable “[interlocutory decisions”); § 2072(c) (authorizing promulgation of rules defining when a district court ruling is final for purposes of appeal under § 1291); Fed. Rule Civ. Proc. 23(f) (pursuant to § 1292(e), accords courts of appeals discretion to permit appeals from district court orders granting or denying class-action certification); Rule 54(b) (providing for “entry of a final judgment as to one or more, but fewer than all, claims or parties”). Did Congress provide for immediate review of the preliminary ruling in question here?
Section 16 of the FAA, governing appellate review of district court arbitration orders, lists as an appealable disposition a district court decision “confirming or denying confirmation of an award or partial award.” 9 U. S. C. § 16(a)(1)(D). Notably, the arbitrators in the matter at hand labeled their decision “Partial Final Clause Construction Award.” App. to Pet. for Cert. 45a. It cannot be true, however, that parties or arbitrators can gain instant review by slicing off a preliminary decision or a procedural order and declaring its resolution a “partial award.” Cf. Hall Street Associates, L. L. C. v. Mattel, Inc., 552 U. S. 576, 588 (2008) (FAA §§9-11, which provide for expedited review to confirm, vacate, or modify arbitration awards, “substantiate] a national policy favoring arbitration with just the limited review needed to maintain arbitration’s essential virtue of resolving disputes straightaway.”).
Lacking this Court’s definitive guidance, some Courts of Appeals have reviewed arbitration awards “finally and definitely dispos[ing] of a separate independent claim.” E. g., Metallgesellschaft A. G. v. M/V Capitan Constante, 790 F. 2d 280, 283 (CA2 1986).[5] Others have considered “partial *692 award[s]” that finally “determin[e] liability, but . . . not. . . damages.” E.g., Hart Surgical, Inc. v. Ultracision, Inc., 244 F. 3d 231, 234 (CA1 2001).[6] Another confirmed an interim ruling on a “separate, discrete, independent, severable issue.” Island Creek Coal Sales Co. v. Gainesville, 729 F. 2d 1046, 1049 (CA6 1984) (internal quotation marks omitted), abrogated on other grounds by Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co., 529 U. S. 193 (2000).
Receptivity to review of preliminary rulings rendered by arbitrators, however, is hardly universal. See Dealer Computer Servs., Inc. v. Dub Herring Ford, 547 F. 3d 558 (CA6 2008) (arbitration panel’s preliminary ruling that contract did not bar class proceedings held not ripe for review; arbitrators had not yet determined that arbitration should proceed on behalf of a class); Metallgesellschaft A. G., 790 F. 2d, at 283, 285 (Feinberg, C. J., dissenting) (“[Piecemeal review] will make arbitration more like litigation, a result not to be desired. It would be better to minimize the number of occasions the parties to arbitration can come to court; on the whole, this benefits the parties, the arbitration process and the courts.”).
While lower court opinions are thus divided, this much is plain: No decision of this Court, until today, has ever approved immediate judicial review of an arbitrator’s decision as preliminary as the “partial award” made in this ease.[7]
*693 III
Even if Stolt-Nielsen had a plea ripe for judicial review, the Court should reject it on the merits. Recall that the parties jointly asked the arbitrators to decide, initially, whether the arbitration clause in their shipping contracts permitted class proceedings. See supra, at 688-689. The panel did just what it was commissioned to do. It construed the broad arbitration clause (covering “[ajny dispute arising from the making, performance or termination of this Charter Party,” App. to Pet. for Cert. 47a) and ruled, expressly and only, that the clause permitted class arbitration. The Court acts without warrant in allowing Stolt-Nielsen essentially to repudiate its submission of the contract-construction issue to the arbitration panel, and to gain, in place of the arbitrators’ judgment, this Court’s de novo determination.
A
The controlling FAA prescription, § 10(a),[8] authorizes a court to vacate an arbitration panel’s decision “only in very unusual circumstances.” First Options of Chicago, Inc. v. Kaplan, 514 U. S. 938, 942 (1995). The four grounds for va *694 catur codified in § 10(a) restate the longstanding rule that, “[i]f [an arbitration] award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a court... will not set [the award] aside for error, either in law or fact.” Burchell v. Marsh, 17 How. 844, 349 (1855).
The sole § 10 ground Stolt-Nielsen invokes for vacating the arbitrators’ decision is § 10(a)(4). The question under that provision is “whether the arbitrators had the power, based on the parties’ submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue.” DiRussa v. Dean Witter Reynolds Inc., 121F. 3d 818, 824 (CA2 1997); Comprehensive Accounting Corp. v. Rudell, 760 F. 2d 138, 140 (CA7 1985). The parties’ supplemental agreement, referring the class-arbitration issue to an arbitration panel, undoubtedly empowered the arbitrators to render their clause-construction decision. That scarcely debatable point should resolve this case.
B
The Court’s characterization of the arbitration panel’s decision as resting on “policy,” not law, is hardly fair comment, for “policy” is not so much as mentioned in the arbitrators’ award. Instead, the panel tied its conclusion that the arbitration clause permitted class arbitration, App. to Pet. for Cert. 52a, to New York law, federal maritime law, and decisions made by other panels pursuant to Rule 3 of the American Arbitration Association’s Supplementary Rules for Class Arbitrations. Id., at 49a-50a.
At the outset of its explanation, the panel rejected the argument, proffered by AnimalFeeds, that this Court’s decision in Green Tree Financial Corp. v. Bazzle, 539 U. S. 444 (2003), settled the matter by “requir[ing] clear language that forbids class arbitration in order to bar a class action.” App. to Pet. for Cert. 49a (emphasis added). Agreeing with Stolt-Nielsen in this regard, the panel said that the test it *695 employed looked to the language of the particular agreement to gauge whether the parties “intended to permit or to preclude class action[s].” Ibid. Concentrating on the wording of the arbitration clause, the panel observed, is “consistent with New York law as articulated by the [New York] Court of Appeals ... and with federal maritime law.” Ibid.[9]
Emphasizing the breadth of the clause in question — “‘any dispute arising from the making, performance or termination of this Charter Party’ shall be put to arbitration,” id., at 50a — the panel noted that numerous other partial awards had relied on language similarly comprehensive to permit class proceedings “in a wide variety of settings.” Id., at 49a-50a. The panel further noted “that many of the other panels [had] rejected arguments similar to those advanced by [Stolt-Nielsen].” Id., at 50a.
The Court features a statement counsel for AnimalFeeds made at the hearing before the arbitration panel, and maintains that it belies any argument that the clause in question permits class arbitration: “[A]ll the parties agree that when a contract is silent on an issue there’s been no agreement that has been reached on that issue.” Ante, at 669 (quoting App. 77a); see ante, at 673, 676, 684, 687, and n. 10. The sentence quoted from the hearing transcript concluded: “[T]herefore there has been no agreement to bar class arbitrations.” App. 77a (emphasis added). Counsel quickly clarified his position: “It’s also undisputed that the arbitration clause here contains broad language and this language should be interpreted to permit class arbitrations.” Id., at 79a. See also id., at 80a (noting consistent recognition by arbitration panels that “a silent broadly worded arbitration clause, just like the one at issue here, should be construed to permit class arbitration”); id., at 88a (“[B]road . . . language . . . silent as to class proceedings should be interpreted to permit a class proceeding.”).
*696 Stolt-Nielsen, the panel acknowledged, had vigorously argued, with the support of expert testimony, that “the bulk of international shippers would never intend to have their disputes decided in a class arbitration.” App. to Pet. for Cert. 52a. That concern, the panel suggested, might be met at a later stage; “if a class is certified,” the panel noted, class membership could be confined to those who affirmatively “ ‘opt in’ ” to the proceeding. Ibid.
The question properly before the Court is not whether the arbitrators’ ruling was erroneous, but whether the arbitrators “exceeded their powers.” § 10(a)(4). The arbitrators decided a threshold issue, explicitly committed to them, see supra, at 688-689, about the procedural mode available for presentation of AnimalFeeds’ antitrust claims. Cf. Shady Grove Orthopedic Associates, P. A. v. Allstate Ins. Co., ante, at 408 (plurality opinion) (“Rules allowing multiple claims (and claims by or against multiple parties) to be litigated together . . . neither change plaintiffs’ separate entitlements to relief nor abridge defendants’ rights; they alter only how the claims are processed.”). That the arbitrators endeavored to perform their assigned task honestly is not contested. “Courts ... do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.” Paperworkers v. Misco, Inc., 484 U. S. 29, 38 (1987). The arbitrators here not merely “arguably,” but certainly, “construjed]... the contract” with fidelity to their commission. Ibid. This Court, therefore, may not disturb the arbitrators’ judgment, even if convinced that “serious error” infected the panel’s award. Ibid.
C
The Court not only intrudes on a decision the parties referred to arbitrators. It compounds the intrusion by according the arbitrators no opportunity to clarify their decision and thereby to cure the error the Court perceives. Section *697 10(b), the Court asserts, invests in this tribunal authority to “decide the question that was originally referred to the panel.” Ante, at 677. The controlling provision, however, says nothing of the kind. Section 10(b) reads, in full: “If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.” (Emphasis added.) Just as § 10(a)(4) provides no justification for the Court’s disposition, see supra, at 693-696 and this page, so, too, § 10(b) provides no grounding for the Court’s peremptory action.
IV
A
For arbitrators to consider whether a claim should proceed on a class basis, the Court apparently demands contractual language one can read as affirmatively authorizing class arbitration. See ante, at 684 (“[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so.”); ante, at 687. The breadth of the arbitration clause, and the absence of any provision waiving or banning class proceedings,[10] will not do. Ante, at 684-687.
The Court ties the requirement of affirmative authorization to “the basic precept that arbitration ‘is a matter of con *698 sent, not coercion.’” Ante, at 681 (quoting Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U. S. 468, 479 (1989)). Parties may “specify with whom they choose to arbitrate,” the Court observes, just as they may “limit the issues they choose to arbitrate.” Ante, at 688. But arbitrators, in delineating an appropriate class, need not, and should not, disregard such contractual constraints. In this case, for example, AnimalFeeds proposes to pursue, on behalf of a class, only “claims ... arising out of any [charter-party agreement] . . . that provides for arbitration.” App. to Pet. for Cert. 56a (emphasis added). Should the arbitrators certify the proposed class, they would adjudicate only the rights of persons “with whom” StoltNielsen agreed to arbitrate, and only “issues” subject to arbitration. Ante, at 683 (emphasis deleted).
The Court also links its affirmative-authorization requirement to the parties’ right to stipulate rules under which arbitration may proceed. See ibid. The question, however, is the proper default rule when there is no stipulation. Arbitration provisions, this Court has noted, are a species of forum-selection clauses. See Scherk v. Alberto-Culver Co., 417 U. S. 506, 519 (1974). Suppose the parties had chosen a New York judicial forum for resolution of “any dispute” involving a contract for ocean carriage of goods. There is little question that the designated court, state or federal, would have authority to conduct claims like AnimalFeeds’ on a class basis. Why should the class-action prospect vanish when the “any dispute” clause is contained in an arbitration agreement? Cf. Connecticut General Life Ins. Co. v. Sun Life Assurance Co. of Canada, 210 F. 3d 771, 774-776 (CA7 2000) (reading contract’s authorization to arbitrate “[a]ny dispute” to permit consolidation of arbitrations). If the Court is right that arbitrators ordinarily are not equipped to manage class proceedings, see ante, at 685-686, then the claimant should retain its right to proceed in that format in court.
*699 B
When adjudication is costly and individual claims are no more than modest in size, class proceedings may be “the thing,” i. e., without them, potential claimants will have little, if any, incentive to seek vindication of their rights. Amchem Products, Inc. v. Windsor, 521 U. S. 591, 617 (1997); Carnegie v. Household Int'l, Inc., 376 F. 3d 656, 661 (CA7 2004) (“The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.”). Mindful that disallowance of class proceedings severely shrinks the dimensions of the case or controversy a claimant can mount, I note some stopping points in the Court’s decision.
First, the Court does not insist on express consent to class arbitration. Class arbitration may be ordered if “there is a contractual basis for concluding that the parties] agreed” “to submit to class arbitration.” Ante, at 684; see ante, at 687, n. 10 (“We have no occasion to decide what contractual basis may support a finding that the parties agreed to authorize class-action arbitration.”). Second, by observing that “the parties [here] are sophisticated business entities,” and “that it is customary for the shipper to choose the charter party that is used for a particular shipment,” the Court apparently spares from its affirmative-authorization requirement contracts of adhesion presented on a take-it-or-leave-it basis. Ante, at 684. While these qualifications limit the scope of the Court’s decision, I remain persuaded that the arbitrators’ judgment should not have been disturbed.
* * *
For the foregoing reasons, I would dismiss the petition for want of a controversy ripe for judicial review. Were I to reach the merits, I would affirm the Second Circuit’s judgment confirming the arbitrators’ clause-construction decision.

 All three panelists are leaders in the international-dispute-resolution bar. See Brief for Respondent 8-9.

 Alternatively, I would vacate with instructions to dismiss for lack of present jurisdiction. See Reply to Brief in Opposition 12, n. 6.

 Counsel for AnimalFeeds submitted in arbitration that "[i]t would cost ... the vast majority of absent class members, and indeed the current claimants,... more to litigate the matter on an individual basis than they could recover. An antitrust case, particularly involving an international cartel[,] ... is extraordinarily difficult and expensive to litigate.” App. 82a (paragraph break omitted).

 Federal Rule of Civil Procedure 23(f), adopted in response to Coopers & Lybrand, gives courts of appeals discretion to permit an appeal from an order granting or denying class-action certification. But the rule would not permit review of a preliminary order of the kind at issue here, i. e., one that defers decision whether to grant or deny certification.

 See Metallgesellschaft A. G., 790 F. 2d, at 283, 284 (Feinberg, C. J., dissenting) (describing exception for separate and independent claims as “creating], in effect, an arbitration analogue to Rule 54(b)”).

 But see Liberty Mut. Ins. Co. v. Wetzel, 424 U. S. 737 (1976) (district court order determining liability but reserving decision on damages held not immediately appealable).

 The parties agreed that the arbitrators would issue a “partial final award,” and then “stay all proceedings ... to permit any party to move a court of competent jurisdiction to confirm or to vacate” the award. App. 56a. But an arbitration agreement, we have held, cannot “expand judicial review” available under the FAA. Hall Street Associates, L. L. C. v. Mattel, Inc., 552 U. S. 576, 586 (2008).

 Title 9 U. S. C. § 10(a) provides:
“In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
“(1) where the award was procured by corruption, fraud, or undue means;
“(2) where there was evident partiality or corruption in the arbitrators, or either of them;
“(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
“(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.”

 On New York law, the panel referred to Evans v. Famous Music Corp., 1 N. Y. 3d 452, 807 N. E. 2d 869 (2004).

 Several courts have invalidated contractual bans on, or waivers of, class arbitration because proceeding on an individual basis was not feasible in view of the high costs entailed and the slim benefits achievable. See, e. g., In re American Express Merchants' Litigation, 554 F. 3d 300, 315-316, 320 (CA2 2009); Kristian v. Comcast Corp., 446 F. 3d 25, 55, 59 (CA1 2006); Discover Bank v. Superior Court, 36 Cal. 4th 148, 162-163, 113 P. 3d 1100, 1110 (2005); Leonard v. Terminix Int'l Co., 854 So. 2d 529, 539 (Ala. 2002) (per curiam). Were there no right to proceed on behalf of a class in the first place, however, a provision banning or waiving recourse to this aggregation device would be superfluous.